**Albert Ray BEAM, Plaintiff,**

v.

**Dave PASKETT, Warden of the Idaho State Prison, Defendant.**

**Civ. No. 89–1114.**

United States District Court,
D. Idaho.

July 30, 1990.

Gar Hackney, Lynn, Scott, Hackney & Jackson, Boise, Idaho, David Skeen, Port Townsend, Wash., for plaintiff.

Jim Jones, Atty. Gen., State of Idaho, Lynn E. Thomas, Sol. Gen., State of Idaho, Boise, Idaho, for defendant.

## MEMORANDUM OF OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

RYAN, Chief Judge.

### FACTS & PROCEDURE

In 1984, petitioner and a co-defendant, Michael Shawn Scroggins, were tried jointly before separate juries and subsequently convicted of first degree murder in the District Court for the Third Judicial District, in and for Canyon County.[1] Thereafter, petitioner appealed the conviction and state court rulings on his motions for post-conviction relief. In the process, petitioner exhausted all available state post-conviction remedies.

On April 17, 1989, petitioner filed the instant petition for writ of habeas corpus in this court. The matter was fully briefed and came on for hearing before this court at the Idaho Maximum Security Institution (IMSI) on December 8, 1989. The petitioner was represented by Gar Hackney and David Skeen. The State of Idaho was represented by Lynn E. Thomas.

The petitioner cites several errors of constitutional magnitude in support of his petition for writ of habeas corpus: (1) that Idaho Code § 19–2827(c)(3) and the Eighth and Fourteenth Amendments of the United States Constitution require a proportionality review by the Idaho Supreme Court of all capital sentences; (2) that petitioner's Eighth and Fourteenth Amendment rights to an impartial post-conviction judge on the issue of proportionality were violated where the trial judge participated in the simultaneous trial of the petitioner and his co-defendant and, thereafter, refused to disqualify himself from hearing petitioner's post-conviction motions; (3) that petitioner was deprived of his constitutional right to a trial by jury on the issues of aggravating and mitigating circumstances; (4) that the

aggravating factors found in Idaho Code §§ 19–2515(f)(5), –(6), and –(8) (1979) fail to adequately channel the sentencing judge's discretion, thus resulting in the arbitrary and capricious imposition of the death sentence; and (5) that the use of a dual jury during a simultaneous trial with his co-defendant violated petitioner's Fifth, Sixth and Fourteenth Amendment rights.

The State of Idaho claims that several of the issues raised in petitioner's petition for writ of habeas corpus have been procedurally defaulted and, therefore, should not be considered by this court. The court, however, is reluctant to apply the procedural bar to issues arising out of and relating to either capital sentencing procedures or the imposition of the sentence of death. *See, e.g., Paradis v. Arave,* 667 F.Supp. 1361, 1365–66 (D. Idaho 1987) (where the Idaho Supreme Court is statutorily obligated to conduct an independent review of all issues arising out of sentencing, this court will infer that all such issues have been decided on direct appeal). The court, finding that the petitioner has not procedurally defaulted as to any of the issues raised in his petition for writ of habeas corpus, will discuss each argument below seriatim.

### ANALYSIS

#### I. *Proportionality*

Petitioner argues in part I of his brief in support of petition for writ of habeas corpus (petition) that Idaho Code § 19–2827(c)(3) and the Eighth and Fourteenth Amendments of the United States Constitution require a proportionality review by the Idaho Supreme Court of all capital sentences. Section 19–2827(c)(3) provides, in pertinent part, that "[the court must consider] [w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Idaho Code § 19–2827(c)(3) (1987). Petitioner does not claim that the Idaho Supreme Court failed to conduct the *statutorily* required review, but only that the guidelines set forth in Section 19–2827(c)(3)

---

**1.** At the same trial, petitioner was also convicted of rape. Petitioner's co-defendant, however, was convicted of the lesser offense, attempted rape.

fail to minimize the risk of arbitrary or capricious decisions in cases having similar factual circumstances.

■ In light of the Supreme Court cases under the Eighth Amendment, particularly *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), and *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), petitioner cannot argue successfully that state courts are constitutionally required to conduct proportionality reviews of death sentences. Both *Pulley* and *McCleskey* state that proportionality review is *not* constitutionally required, provided that the state's statutory procedures adequately channel the sentencer's discretion. *McCleskey v. Kemp,* 481 U.S. at 306, 107 S.Ct. at 1774. These decisions make clear that proportionality review *may* be considered and implemented by the states as an additional safeguard against arbitrarily imposed death sentences; proportionality review, however, is simply not constitutionally required.

In the present case, petitioner, in addition to asserting that Idaho Code §§ 19–2515(f)(5), –(6) and –(8) fail to sufficiently narrow or channel the sentencer's discretion (*see* part IV of Brief of Petitioner, filed Sept. 18, 1989), argues that additional "channeling" is necessary in order to reduce or eliminate the potential for arbitrary and/or capricious, i.e., disproportional, sentences. Petitioner, in support of this argument, directs the court's attention to the case of petitioner's co-defendant wherein the Idaho Supreme Court reversed a sentence following a proportionality review.

Under the Idaho capital sentencing statutes, if a defendant is convicted of murder, the court thereafter determines whether each aggravating circumstance outweighs each and every mitigating circumstance. At that point, the defendant becomes "death penalty eligible." Once this determination is made, there is a presumption that the death sentence is not disproportionate to the crime. *See, e.g., Pulley v. Harris,* 465 U.S. at 43, 104 S.Ct. at 875. The court in *Pulley* noted further that the existence of other safeguards or limitations on the sentencer's discretion renders "pro-

portionality review" superfluous. *Id.* at 49, 104 S.Ct. at 879.

It is clear that proportionality review is not constitutionally required where, as here, the state's capital sentencing scheme adequately channels the sentencer's discretion. *See* part IV of this order, at 962–965. Moreover, the mere fact that petitioner's co-defendant did not receive the death penalty does not establish that the Idaho punishment system operates in an arbitrary and capricious manner. *Cf. McCleskey v. Kemp,* 481 U.S. at 306–07, 107 S.Ct. at 1774–75. The court, based upon the foregoing analysis and finding that petitioner has no constitutional right to a proportionality review, will deny petitioner's request for habeas relief as to this issue.

## II. *Defendant's Constitutional Right to an Impartial and/or Unbiased Post–Conviction Judge*

Petitioner asserts in part II of his brief in support of the petition that his Eighth and Fourteenth Amendment rights to an impartial post-conviction judge on the issue of proportionality were violated where the trial judge participated in the simultaneous trial of the petitioner and his co-defendant and, thereafter, refused to disqualify himself from hearing petitioner's post-conviction motions.

It is well settled that "a fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) (*quoting In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)); *see also United States v. Navarro–Flores,* 628 F.2d 1178 (9th Cir.1980). The Supreme Court noted further in *Larkin* that "[n]ot only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin,* 421 U.S. at 47, 95 S.Ct. at 1464 (*quoting In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625).

The Supreme Court has not addressed this issue directly. The Court has, however, had a number of occasions to discuss

the propriety and/or constitutionality of combining investigative and adjudicatory functions into a single administrative agency, i.e., whether the combining of such activities in one agency violates concepts of due process. These cases, although not directly on point, are instructive on the issues of judicial prejudice and bias. The court in *Larkin* noted, in dicta, that:

> No decision of this Court would require us to hold that it would be a violation of procedural due process for a judge to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law. In fact, judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions of both law and fact.

*Id.* at 48–49, 95 S.Ct. at 1465 (*quoting FTC v. Cement Institute,* 333 U.S. 683, 702–03, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948)). Later, the Court noted:

> Certainly it is not the rule of judicial administration that, statutory requirements apart ... a judge is disqualified from sitting in a retrial because he was reversed on earlier rulings. We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing.

*Id.* 421 U.S. at 49, 95 S.Ct. at 1465 (*quoting NLRB v. Donnelly Garment Co.,* 330 U.S. 219, 236–37, 67 S.Ct. 756, 765, 91 L.Ed. 854 (1947)). Still later, the Court cited *Cement Institute* for the following proposition: "[I]t is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around." *Id.* 421 U.S. at 57, 95 S.Ct. at 1469 (*citing FTC v. Cement Institute,* 333 U.S. at 702–703, 68 S.Ct. at 804–805).

▮ Contrary to petitioner's urging, these passages suggest that a trial judge is not automatically disqualified because of prior exposure to (1) the parties; (2) the facts of the particular case; or (3) because he may have expressed an opinion regard-

ing the issues in the case. Other cases make clear that alleged bias or prejudice, in order to be disqualifying, must stem from an *extrajudicial* source (apart from that which the judge learned from his participation in the case) and result in an opinion on the merits. *See United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) (*citing Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921); *see also United States v. Monaco,* 852 F.2d 1143, 1147 (9th Cir.1988) (alleged prejudice must result from an extrajudicial source); *United States v. Frias–Ramirez,* 670 F.2d 849, 853 n. 6 (9th Cir.), *cert. denied,* 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982) (parties may not attack a judge's impartiality based on the basis of information and beliefs acquired while acting in his or her judicial capacity); *United States v. Navarro–Flores,* 628 F.2d 1178 (9th Cir.1980) (information concerning defendant derived from report acquired in proper performance of his duties as a judge in a criminal proceeding would not sustain defendant's claims of judicial bias on appeal).

▮ In the present case, the petitioner has not alleged that the judge received *extrajudicial* information. Petitioner alleges, instead, that the trial judge received and considered information and/or testimony which the petitioner did not have an adequate opportunity to rebut or contest. The court, finding that petitioner has failed to allege or establish judicial bias flowing from an extrajudicial source, would not be incorrect to deny petitioner's second basis for relief on this basis alone.

There is an additional basis upon which to deny petitioner's second request for habeas relief. As the court previously found in part I of this order, the petitioner has no constitutional right to a proportionality review. It cannot be gainsaid then that the judge's failure to disqualify himself from the post-conviction proceedings on the issue of proportionality somehow violates petitioner's Eighth and Fourteenth Amendment rights to an impartial post-conviction judge. Stated alternatively, petitioner cannot argue that his constitutional rights to a proportionality review were violated at the post-conviction proceedings when he had no

constitutional right to such a proportionality review in the first place. For all the reasons noted above, petitioner's request for habeas relief as to this issue must also be denied.

### III. *Jury Sentencing*

Petitioner argues in part III of his brief in support of his petition, that he has a constitutional right to trial by jury on the issues of aggravating and mitigating circumstances. Petitioner's third claim for relief rests primarily on the recent Ninth Circuit opinion of *Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988), *cert. denied, Lewis v. Adamson,* —— U.S. ——, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990), wherein the court struck down Arizona's capital sentencing scheme after finding that the petitioner was entitled to a trial by jury on the issues of aggravating and mitigating factors. In the present case, the petitioner, noting the similarities between Arizona's and Idaho's capital sentencing schemes, argues: (1) that he was deprived of his constitutional right to a trial by jury on the issues of aggravating and mitigating circumstances; and (2) that the sentence of death must, therefore, be set aside.

The court, assuming without deciding that Idaho's death penalty statute is sufficiently analogous to Arizona's, will now look to the merits of petitioner's third basis for habeas relief.

But for the relatively recent Supreme Court decisions in *Walton,*[2] *Clemons,*[3] and *Hildwin,*[4] this court would be compelled to follow the Ninth Circuit precedent set forth in *Adamson.* These cases make clear that the majority of the Supreme Court has confronted the issue of jury sentencing in capital cases head-on; the clear teaching of these cases is that nothing in the Constitution requires the jury impose the sentence of death or to make the findings prerequisite to the imposition of such a sentence.

■ Based on the Supreme Court majority's pronouncements in *Walton, Clemons,* and *Hildwin,* and notwithstanding the minority's unexplained departure from these cases in *Adamson,*[5] the court finds that petitioner has no constitutional right to jury sentencing on the issues of aggravating and mitigating circumstances. Therefore, petitioner's request for habeas relief as to this issue must be denied.

### IV. *Channel Sentencing Authority's Discretion*

■ Petitioner argues in part IV of his brief in support of his petition that the

2. *Walton v. Arizona,* —— U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (the Constitution does not require that every finding of fact underlying a sentencing decision be made by a jury rather than by a judge).

3. *Clemons v. Mississippi,* 494 U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (nothing in the Sixth Amendment, the Eighth Amendment, or any other constitutional provision requires the jury impose the sentence of death or to make the findings prerequisite to the imposition of such a sentence).

4. *Hildwin v. Florida,* 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728, *reh'g denied,* —— U.S. ——, 109 S.Ct. 3268, 106 L.Ed.2d 612 (1989) (the fact that a capital sentencing is like a trial in respects significant to the Double Jeopardy Clause does not mean that it is like a trial in respects significant to the Sixth Amendment's guarantee of a jury trial).

5. The Supreme Court's recent decision in *Adamson* is set forth in its entirety below; the decision provides:

The motion of respondent for leave to proceed *in forma pauperis* is granted. The petition for a writ of certiorari is denied. The Chief Justice, Justice White and Justice Scalia would grant the petition for a writ of certiorari, vacate the judgment and remand the case to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *Walton v. Arizona,* 496 U.S. [——, 110 S.Ct. 3047, 111 L.Ed.2d 511] (1990), *Lewis v. Jeffers,* 496 U.S. [——, 110 S.Ct. 3092, 111 L.Ed.2d 606] (1990) and *Alabama v. Smith,* 490 U.S. [——, 109 S.Ct. 2201, 104 L.Ed.2d 865] (1989). Justice O'Connor and Justice Kennedy took no part in the consideration or decision of this motion and this petition. *Lewis v. Adamson,* —— U.S. ——, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). Counsel for the petitioner has requested leave of the court to file supplemental briefing in light of these decisions. *See* Motion to File Supplemental Briefs, filed July 19, 1990. The court finds, however, that such briefing is unnecessary given the clear weight of Supreme Court authority suggests that a defendant has no constitutional right to jury sentencing on the issues of aggravating and mitigating circumstances.

aggravating factors found in Idaho Code § 19–2515(f)(5), –(6), and –(8) fail to adequately channel the sentencing judge's discretion, thus resulting in the arbitrary and capricious imposition of the death sentence. The Supreme Court, beginning with *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), set forth the standards by which state capital sentencing schemes are to be judged. *Furman* and its progeny make clear that a state capital sentencing scheme, in order to pass constitutional muster, must channel the sentencer's discretion with clear, objective and specific standards. As the Court noted in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980),

> [I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty.... It must channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death."

*Id.* at 428, 100 S.Ct. at 1764–65 (footnotes omitted). A sentencing scheme patterned along these general lines, however, does not automatically satisfy *Furman*. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 195 n. 46, 96 S.Ct. 2909, 2935 n. 46, 49 L.Ed.2d 859 (1976) (wherein the Court noted that "[a] system could have standards so vague that they would fail adequately to channel the sentencing decision ... with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur.")

The issue of vagueness implicates essentially two questions: (1) whether the standards themselves are unconstitutionally vague on their face; and (2) whether the standards, although not impermissibly vague, are applied in an arbitrary and capricious manner. In the present case, the sentencing court relied upon three statutorily aggravating circumstances, Idaho Code §§ 19–2515(f)(5), –(6) and –(8), in imposing the death sentence. Subsection 5 provides that, "[t]he murder was especially heinous,

atrocious or cruel, manifesting exceptional depravity." Idaho Code. § 19–2515(f)(5) (1979). Subsection 6 provides that, "[b]y the murder, or circumstances surrounding its commission, the defendant exhibited utter disregard for human life.". Idaho Code § 19–2515(f)(6) (1979). Subsection 8 provides that, "[t]he defendant, by prior conduct or. conduct in the commission of the murder at hand, has exhibited a propensity to commit murder which will probably constitute a continuing threat to society." Idaho Code § 19–2515(f)(8) (1979).

■ The petitioner argues the aggravating circumstances found in subsections 5, 6 and 8 are overly broad and inclusive, i.e., application of these aggravating circumstances fails to channel the sentencer's discretion. Petitioner argues in addition that subsections 5 (especially heinous) and 6 (utter disregard for human life) could conceivably apply to any capital murder case.

Whether the above provisions could apply to any capital murder case is arguable. However, in this case, as in *Gregg, supra*, subsections 5, 6 and 8 need not be construed in such an arbitrary manner. Moreover, there is no reason to presume that the Idaho Supreme Court will adopt such an open-ended construction of these sentencing factors. In other words, it does not necessarily follow that where sentencing factors *may* be susceptible to subjective interpretation, that the court must automatically strike them down as "unconstitutionally vague."

■ Accordingly, the court must determine whether Idaho's sentencing factors, although not impermissibly vague on their face, have been applied by the Idaho Supreme Court in an arbitrary and capricious manner. Each of the above-challenged sentencing factors has been refined and defined in subsequent decisions of the Idaho Supreme Court. In *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981), the court had occasion to address subsections 5 (especially heinous) and 6 (utter disregard). The court, quoting with approval *State v. Dixon*, 283 So.2d 1, 9 (Fla.1973), stated as to subsection 5 that:

It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. *What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim.*

*State v. Osborn,* 102 Idaho at 418, 631 P.2d at 200 (emphasis in original). The term "exceptional depravity" as interpreted by the Idaho Supreme Court is limited "only to those [murders] where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence." *Id. (quoting State v. Simants,* 197 Neb. 549, 250 N.W.2d 881, 891, *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977).

The court, discussing subsection 6 and realizing the potential for overlap with other provisions of Section 19–2515(f), stated:

[T]he phrase "utter disregard" must be viewed in reference to acts other than those set forth in I.C. §§ 19–2515(f)(2), (3), and (4). We conclude instead that the phrase is meant to be reflective of acts or circumstances surrounding the crime which exhibit the highest, the utmost, callous disregard for human life, i.e., the cold-blooded, pitiless slayer.

*Id.* 102 Idaho at 419, 631 P.2d at 201.

Subsection 8 (propensity to commit murder) is admittedly less susceptible to an arbitrary and capricious application than the other challenged sentencing factors above. Nevertheless, petitioner argues that it too should be struck down as unconstitutionally vague. The Idaho Supreme Court commented on subsection 8 in *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983) noting:

We would construe "propensity" to exclude, for example, a person who has no inclination to kill but in an episode of rage, such as during an emotional family or lover's quarrel, commits the offense of murder.... [W]e construe the "propensity" language to specify that person who is a willing, predisposed killer, a killer who tends toward destroying the life of another, one who kills with less than the normal amount of provocation. We would hold that propensity assumes a proclivity, a susceptibility, and even an affinity toward committing the act of murder.

*Id.* at 370–371, 670 P.2d at 471–472.

This court is persuaded upon a review of the sentencing factors set forth in Idaho Code §§ 19–2515(f)(5), –(6) and –(8), and subsequent interpretations of those factors by the Idaho Supreme Court, that the sentencing court was provided with adequate, objective guidelines to guide and channel its discretion. Moreover, the record demonstrates that the sentencer was cognizant of, and adhered to, the limits placed on these aggravating factors by the Idaho Supreme Court. *Cf. Paradis v. Arave,* 667 F.Supp. 1361 (D.Idaho 1987) (wherein this court held that the statutory language and the construction set forth in *Osborn* provide constitutionally adequate guidelines to direct the discretion of the sentencing authority). Consequently, petitioner's request for habeas relief as to this issue must be denied.

## V. *Dual Jury*

Petitioner argues in part V of his brief in support of his petition that the use of a dual jury during a simultaneous trial with his co-defendant violated his Fifth, Sixth and Fourteenth Amendment rights.

At the outset, it should be noted that the majority of the Circuit Courts of Appeals have upheld the use of the dual jury system absent a specific showing of prejudice. (*See United States v. Sidman,* 470 F.2d 1158 (9th Cir.1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973)); *United States v. Lebron–Gonzalez,* 816 F.2d 823 (1st Cir.1987); *Smith v. DeRobertis,* 758 F.2d 1151 (7th Cir.1985); *United States v. Lewis,* 716 F.2d 16 (D.C.Cir.1983); *United States v. Hayes,* 676 F.2d 1359

(11th Cir.1982); and *United States v. Rimar*, 558 F.2d 1271 (6th Cir.1977). The District of Columbia Court of Appeals, in discussing the federal court's role in reviewing the use of a dual jury, noted that:

> This court's task is not to determine whether the district court made the optimal decision on the eve of trial when it decided to impanel two juries rather than accept the added drain on the judicial resources that severing the defendant's cases would have entailed. Rather, *this court's task is to determine whether the procedure imposed by the district court comports with the basic norm of due process. The basic fairness of the dual jury procedure can only be properly evaluated in light of the trial itself by determining whether any evidence indicates that the procedure specifically prejudiced a litigant's defense.*

*United States v. Lewis*, 716 F.2d 16, 20 (D.C.Cir.1983) (emphasis added).

Petitioner, rather than alleging specific prejudice as a result of the dual jury system, focuses on the events surrounding the cross-examination of his co-defendant, Scroggins. Petitioner alleges that while he and his attorney were present during the cross-examination of Scroggins, neither was permitted to cross-examine or participate in the trial in any manner. Petitioner alleges that the co-defendant, during his testimony, "pointed the finger at the Petitioner, yet the Petitioner could not challenge or defend these allegations in any way." Brief of Petitioner, filed Sept. 18, 1989, at 59. Petitioner, however, freely admits that the petitioner's jury was removed from the courtroom during the testimony of his co-defendant—testimony which tended to *inculpate* the petitioner rather than exculpate him.

The court has difficulty understanding where or how this dual jury procedure prejudiced the petitioner. Furthermore, it appears that petitioner would have been damaged more if his jury had been allowed to hear the inculpatory testimony and cross-examination of his co-defendant. Petitioner, however, alleges that the above-described procedure was prejudicial to him in

that, as a direct result, Scroggins was convicted of *attempted* rape and felony murder and that petitioner was convicted of rape and felony murder.

Petitioner argues, secondly, that the disparity in sentences between himself and his co-defendant support a finding of prejudice. In the mind of the petitioner, these disparate sentences, arguably the result of the uncontroverted testimony of petitioner's co-defendant, substantiate a claim of prejudice. Petitioner's argument, viewed in this light, is recognized for what it really is, a thinly disguised proportionality argument. This argument has been considered above in part II and rejected, i.e., proportionality review is not constitutionally required (evidence that co-defendant received a lesser sentence will not support a claim that sentence is disproportionate).

If the court is mistaken and petitioner is raising issues separate and distinct from the proportionality issue discussed above, an additional point must be made. Petitioner maintains that the district court's decision to impose, and the Idaho Supreme Court's decision to uphold, the death sentence was the result of the uncontroverted testimony of his co-defendant. To the extent petitioner is correct, the findings of these state courts as to the relative degrees of culpability and the appropriateness of the sentences are more akin to findings of fact and, as such, should be entitled to the "presumption of correctness" set forth in 28 U.S.C. § 2254(d). Petitioner has not even attempted to "burst" this presumption. Therefore, the court could deny petitioner's request for relief as to this issue pursuant to 28 U.S.C. § 2254(d).

The court, assuming that petitioner is raising issues separate and distinct from those raised in part I of his brief in support of the petition, will look to the merits of petitioner's argument. As noted above, petitioner has failed to allege any specific indicia of prejudice resulting from the state's use of a dual jury; his argument of prejudice is entirely speculative. In fact, petitioner can point to no specific indicia of prejudice to support his claim that the use

of a dual jury at trial violated his Fifth, Sixth and Fourteenth Amendment rights. Petitioner speculates that "all sorts of problems *could* arise from the use of a dual jury system;" that the use of a dual jury system *"may* have affected strategic decisions as to whether petitioner should testify"; and that "the jury *may* have drawn adverse inferences from the use of the dual jury system."

The question, however, is not whether the use of a dual jury system was correct, but rather whether the use of a dual jury prejudiced and/or denied the petitioner his right to a fair trial. *See, e.g., United States v. Lewis,* 716 F.2d at 20. Moreover, where the defendant can point to no specific indicia of prejudice at trial and where it appears the dual jury system operated to protect defendant's constitutional rights, the fact that such a system is without statutory authority should not trouble the court. *See, e.g., Smith v. DeRobertis,* 758 F.2d 1151 (7th Cir.1985) (court upheld use of dual jury by state trial court on habeas challenge in spite of fact that the Illinois Code did not provide for the use of dual juries). The fact that this is a capital case does not alter the constitutional requirements of due process.

In the absence of such affirmative showing of prejudice, this court would be remiss to set aside the sentence imposed and affirmed on direct appeal. Therefore, petitioner's fifth request for habeas relief must also be denied.[6]

### ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that petitioner's petition for writ of habeas corpus should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the stay of execution of sentence of death shall remain in effect to and including August 20, 1990, after which the stay heretofore issued by this court shall thereupon be dissolved.

IT IS FURTHER ORDERED that petitioner's Motion to File Supplemental Briefs, should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that petitioner's Motion to Stay Proceedings Pending Full Resolution of State Proceedings should be, and is hereby, DENIED.

---

**6.** Petitioner filed a Motion to Stay Proceedings Pending Full Resolution of State Proceedings on July 18, 1990. Petitioner's motion is based upon the 1989 Idaho Supreme Court decision of *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989). Petitioner concedes therein, however, that *Charboneau* rests entirely upon state grounds and involves no federal issues. *See*

Memorandum in Support of Motion to Stay Proceedings Pending Full Resolution of State Proceedings, filed July 18, 1990, at 1. Accordingly, the court, based upon the representation of petitioner's counsel and finding that there are no federal or other constitutional issues left for this court to decide, will deny petitioner's motion to stay.