**Albert Ray BEAM, Petitioner–Appellant,**

v.

**David PASKETT, Warden, Idaho State Prison–Boise, Respondent–Appellee.**

**No. 90–35616.**

United States Court of Appeals, Ninth Circuit.

Sept. 2, 1993.

As Amended Nov. 16, 1993.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Dec. 7, 1993.

1302

David Skeen, Port Townsend, WA and Gar Hackney, Lynn, Scott, Hackney & Jackson, Boise, ID, for petitioner-appellant.

Lynn E. Thomas, Boise, ID, for respondent-appellee.

Before: NELSON, BOOCHEVER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

In 1983, the petitioner, Albert Ray Beam, and Michael Shawn Scroggins were charged with the rape and murder of thirteen-year old Mondi Lenten. Each of the defendants, during the course of the proceedings, attempted to place the blame for the crime on the other, and a central issue in the case was which of the two was primarily responsible for the murder. For this reason, each' defendant was represented by separate counsel. They were, however, tried jointly. Concerned that each defendant's statements, which inculpated the other, would not be admissible in the other's trial under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the state requested the court to empanel two juries to hear the case—the juries to sit simultaneously when issues relevant to both defendants were introduced and separately otherwise. The state trial judge, Edward J. Lodge, granted the request. Thus, for example, when testimony probative as to Beam but prejudicial as to Scroggins was introduced or Beam's counsel would cross-examine a witness, Scroggins' jury would be excused—and vice versa. Separate opening and closing arguments were given before each jury.

Beam's jury found Beam guilty of premeditated first degree murder and rape. Scroggins' jury convicted Scroggins of first degree murder, finding that he aided and abetted the crime but did not commit it directly, and also convicted him of attempted rape. Both defendants were acquitted on the separate enhancement charge of using a deadly weapon in the commission of a crime.

The trial judge sentenced Beam to death for murder and to 30 years in prison for rape. He sentenced Scroggins to death for murder and to ten years in prison for attempted rape. In Beam's case, he relied on three statutory aggravating circumstances: the murder was "especially heinous, atrocious, cruel and manifested exceptional depravity"; the defendant "exhibited utter disregard for human life"; and the defendant "exhibited a propensity to commit murder which will probably constitute a continuing threat to society."

Both defendants appealed to the Idaho Supreme Court. Beam's conviction and sen-

tence were upheld in *State v. Beam,* 109 Idaho 616, 710 P.2d 526 (1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986). The sentence of death in Scroggins' case was reversed, however. *See State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152, 1161 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986). The state court held that, in light of the fact that Scroggins did not personally commit the crime, did not have a history of violent criminal conduct, had barely reached the age of majority, and came from a troubled family, his sentence was disproportionate to the sentences of other Idaho capital defendants. *See id.* 716 P.2d at 1159–60. Scroggins' case was remanded to the state trial court for resentencing.

Judge Lodge recused himself from presiding over Scroggins' resentencing. First, he expressed disagreement with the Idaho Supreme Court's disparate treatment of Beam and Scroggins, stating that the actions of the two defendants were "equivalent" and that "the record in this case supports the conclusion that any disparity between Scroggins' and Beam's participation is a distinction with little difference." Next, he stated that "reasonable minds could not differ" about the fact that Scroggins deserved to die. Finally, reviewing the sentencing alternatives remaining in Scroggins' case—"a fixed sentence without chance of parole, with costs running between $28.00 and $55.00 per day, or a life sentence with eligibility of parole in ten years"—he concluded that none was "reasonable or acceptable to the conscience of this court." Accordingly, Judge Lodge determined to have no "further involvement in these matters." Scroggins was then resentenced by a different judge.

Following Scroggins' resentencing, Beam filed a petition for post-conviction relief and a motion for a reduction of his sentence, raising a number of constitutional issues. In addition, Beam moved to disqualify Judge Lodge from sitting in the post-conviction and sentence reduction proceedings. Judge Lodge summarily denied the disqualification motion and then rejected Beam's claims for relief. The Idaho Supreme Court affirmed. *See State v. Beam,* 115 Idaho 208, 766 P.2d 678 (1988), *cert. denied,* 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989).

Beam then filed a petition for writ of habeas corpus in the United States District Court for the District of Idaho. His petition was denied. *See Beam v. Paskett,* 744 F.Supp.

958 (D.Idaho 1990). On appeal, we affirmed his conviction but vacated his death sentence. *See Beam v. Paskett (Beam I),* 966 F.2d 1563 (9th Cir.1992). We did so after holding that the "utter disregard" factor was unconstitutionally vague, relying primarily on *Creech v. Arave,* 947 F.2d 873 (9th Cir.1991). Last term, the United States Supreme Court reversed *Creech, see Arave v. Creech,* ––– U.S. –––, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), vacated our judgment, and remanded the case for further reconsideration. *See Arave v. Beam,* ––– U.S. –––, 113 S.Ct. 1837, 123 L.Ed.2d 464 (1993). On remand, we again affirm Beam's conviction and again vacate his death sentence. It is, however, only the latter that we have reconsidered.

### I. The Constitutionality of Beam's Conviction

■ Beam contends that the use of dual juries during the simultaneous trial of Scroggins and himself violated his rights under the Fifth, Sixth and Fourteenth Amendment. In the absence of prejudice to the defendant, courts have on some occasions allowed the use of dual juries in non-capital cases. *United States v. Sidman,* 470 F.2d 1158, 1169–70 (9th Cir.1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *see also Smith v. DeRobertis,* 758 F.2d 1151, 1152 (7th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 118, 88 L.Ed.2d 96 (1985); *United States v. Lewis,* 716 F.2d 16, 19 (D.C.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 492, 78 L.Ed.2d 686 (1983). We have never considered the question in connection with a capital case, but a number of courts have expressed serious reservations regarding the use of dual juries in any but the simplest of trials, *see, e.g., Scarborough v. State,* 50 Md.App. 276, 437 A.2d 672, 674–76 (1981); *State v. Corsi,* 86 N.J. 172, 430 A.2d 210 (1981). Our affirmance in *Sidman* was qualified by the statement that "our holding is not to be read as an endorsement of the 'experiment' that was carried out in this case," 470 F.2d at 1170.

We need not determine here whether use of a dual jury in a case resulting in capital punishment would be a ground for invalidating a conviction. Because we vacate Beam's death sentence on other grounds, we do not subject his trial to the exacting constitutional

scrutiny required when a defendant's life will be taken. Although there are some procedural requirements that are imposed on capital trials regardless of the actual sentence received by the defendant, *see, e.g., Wiggerfall v. Jones,* 918 F.2d 1544, 1548–50 (11th Cir.1990), we believe that the level of constitutional scrutiny given to the state's use of a dual jury procedure is determined by the nature of the punishment the defendant will actually suffer rather than by the potential that existed at the outset of the trial. The dual jury procedure introduces additional complexity and likelihood of error into the trial and thereby impairs a defendant's ability to conduct his defense. For this reason, a dual jury verdict is inherently more dubious than an ordinary verdict—even in the absence of a showing of specific prejudice. The degree of unreliability is not dependent, however, upon whether the trial is a capital one or not. *Cf. Beck v. Alabama,* 447 U.S. 625, 642–43, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980) (stating that jury verdicts following a failure to give a lesser included offense instruction are inherently more suspect in capital than non-capital trials). Whatever additional constitutional constraints exist on the use of dual juries in capital trials would be a consequence of the greater reliability demanded of verdicts upon which a sentence of death is based, and not upon any additional uncertainty created by the fact that the trial is capital in nature. Because we vacate Beam's death sentence, we analyze his challenge to the dual jury system under the standards applicable in non-capital cases.

We do not believe that the use of dual juries in a non-capital case is by itself grounds for reversal in a habeas case. Although we were careful not to sanction the continued use of dual juries when we af-

firmed a dual jury conviction in *Sidman,* 470 F.2d at 1170, our review of a state court conviction is ordinarily limited to violations of federal constitutional law; we may not exercise our supervisory powers in such a context, *see Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Thus, while it is possible that we would disapprove such a procedure as "inappropriate" if used by a federal district court, *cf. United States v. Alvarado,* 838 F.2d 311, 316 (9th Cir.) (holding that the district judge committed error by using an "inappropriate" jury instruction), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988), we will affirm a state court dual jury verdict unless it violates the Constitution—specifically, we will affirm such a verdict (that does not serve as the basis for the defendant's execution) unless the defendant can demonstrate that he was prejudiced by the use of the procedure. *See Smith,* 758 F.2d at 1152.

The issue, therefore, is whether Beam was prejudiced by the use of the dual juries. The district court determined that he was not. We agree. There is no indication in the record before us that Beam's defense was hampered or the prosecutor's case unfairly strengthened by the state's use of the dual jury trial.[1] We therefore reject Beam's challenge to the dual jury verdict in this case.[2]

## II. The Constitutionality of Beam's Death Sentence

Beam was sentenced to death pursuant to Idaho Code § 19–2515. Under this section, a person convicted of a capital offense may not be sentenced to death unless the court finds that at least one statutory aggravating circumstance is present. *See* Idaho Code § 19–

---

1. The state's use of dual juries rather than a single jury in the joint trial of Beam and Scroggins may have had a strategic element to it. When dual juries are used, it becomes more likely that both defendants will be convicted of the most grievous conduct alleged, thereby leading to the imposition of the death penalty on both. A single jury, on the other hand, may well assess relative blame, with the resultant imposition of a non-capital sentence on the less blameworthy of the two defendants. Any such strategic motivation has been rendered inconsequential here, however. Both juries did not convict their respective defendants of the same degree of criminal conduct; Scroggins was convicted of aiding and abetting. Further, the fact that we

vacate Beam's sentence lessens our concern regarding the consequences of any strategic motive that underlay the prosecution's choice of the dual jury system. *Cf. Fisher v. United States,* 328 U.S. 463, 485 n. 8, 66 S.Ct. 1318, 1330 n. 8, 90 L.Ed. 1382 (1946) (Frankfurter, J., dissenting) ("Federal judges are not referees in sporting contests. Their duty to keep a trial in the course of justice is especially compelling where the penalty for conviction is death.").

2. Nothing in this part of our opinion precludes Beam from raising this issue again if the state seeks to have the death penalty imposed on him following remand.

2515(c). If the court finds such a circumstance, it "shall sentence the defendant to death unless [it] finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust." *Id.* Subsection (g) lists 10 statutory aggravating circumstances. *See* Idaho Code § 19–2515(g)(1–10).

The state court found three aggravating circumstances in Beam's case. First, it found that "[t]he murder was especially heinous, atrocious, cruel and manifested exceptional depravity." (Idaho Code § 19–2515(g)(5)). Next, it found that "the defendant exhibited utter disregard for human life." (§ (g)(6)). Finally, it found that the defendant "has exhibited a propensity to commit murder which will probably constitute a continuing threat to society." (§ (g)(8)). Having found the requisite statutory aggravating factors, the court then sentenced Beam to death, stating that "[i]t is clear from the record and the facts of this case that the mitigating circumstances do not outweigh the gravity of the aggravating circumstances so as to make unjust the imposition of the death penalty."

We must determine whether Beam's death sentence is constitutional in light of the trial court's application of the above statutory provisions.

### A. The "Utter Disregard" Factor

In *Beam I,* we determined that one of the three statutory aggravating factors found to be present in Beam's case—that "the defendant exhibited utter disregard for human life"—was unconstitutionally vague. *See Beam I,* 966 F.2d at 1574–75. We relied principally upon *Creech v. Arave,* 947 F.2d 873 (9th Cir.1991). Last term, the Supreme Court reversed *Creech* and held that the "utter disregard" factor as construed by the Idaho Supreme Court was not unconstitutionally vague. *See Creech,* —— U.S. at ——–——, 113 S.Ct. at 1544–45. The Court then remanded this case for further consideration. *See Beam,* —— U.S. at ——, 113 S.Ct. at 1837. We are of course bound by the Supreme Court's holding in *Creech* that the

"utter disregard" factor is not unconstitutionally vague. Thus, we proceed to an examination of another of the three aggravating factors.

### B. The "Continuing Threat" Factor

We consider next whether the sentencing judge's application of the "continuing threat" aggravating factor—that the defendant "has exhibited a propensity to commit murder which will probably constitute a continuing threat to society"—was unconstitutional. During the sentencing proceedings, Judge Lodge found that Beam's "prognosis for any substantive rehabilitation is non-existent." *Beam,* 766 P.2d at 700. This finding in turn was based substantially on Beam's past non-violent, consensual or involuntary sexual conduct. *See id.* We must determine, therefore, whether the judge's reliance upon such past conduct in imposing a death sentence on Beam renders his application of the "continuing threat" factor violative of the Eighth Amendment.

### 1. Procedural Default

As a threshold matter, we must decide whether Beam fairly presented the claim that the trial court's application of the "continuing threat" aggravating factor was unconstitutional. If Beam has not, then he has procedurally defaulted this claim, and he must demonstrate cause and prejudice for the procedural default before a federal court may entertain the claim in a habeas proceeding.

It appears that Beam has fairly presented his claim. It is true that the Idaho Supreme Court's opinion in Beam's case never expressly refers to a constitutional challenge to the application of the "continuing threat" factor. However, in the brief he filed in that court on direct review, Beam challenged the Idaho death penalty statute as unconstitutionally arbitrary. By definition, that challenge would appear to require the court to consider whether the statutory "continuing threat" factor, as applied, was based upon arbitrary considerations, specifically upon considerations involving past conduct that

are unrelated to any legitimate punitive purpose. Under this rationale the claim would not be defaulted, regardless of the fact that the Idaho Supreme Court did not expressly refer to it. *See Smith v. Digmon*, 434 U.S. 332, 333, 98 S.Ct. 597, 598, 54 L.Ed.2d 582 (1978) (per curiam).

■ Even if Beam had failed fairly to present the claim to the state supreme court, under Idaho law he would still not have to demonstrate cause and prejudice. Idaho Supreme Court review of Beam's death sentence was conducted pursuant to Idaho Code § 19–2827. Under this provision, the Idaho Supreme Court has an affirmative duty to review the entire record in a capital case to determine, *inter alia*, whether "the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." The state court must consider possible errors in sentencing that are not raised by the defendant or were not objected to at his trial. *See State v. Osborn*, 102 Idaho 405, 631 P.2d 187, 193 (1981) ("[W]e may not ignore unchallenged errors. Moreover, the gravity of a sentence of death and the infrequency with which it is imposed outweighs any rationale that might be proposed to justify refusal to consider errors not objected to below."). Indeed, the Idaho Supreme Court must review a capital defendant's death sentence even if the defendant brings no appeal at all. *See id.*, 631 P.2d at 192–93.

At least six Western states in addition to Idaho have adopted some form of mandatory review as part of their death penalty procedures. *See* Ariz.R.Crim.P. 31.2(b); Cal.Penal Code §§ 1239(b), 1240.1(e)(1); Mont.Code §§ 46–18–307, 46–18–310; Nev.Rev.Stat. § 177.055; Ore.Rev.Stat. § 163.150(1)(g); Wash.Rev.Code §§ 10.95.100, 10.95.130. We have never considered the effect of any of these mandatory review provisions on a habeas petitioner's procedural default. We note, however, a distinction between the Idaho procedures and that of some of the other states. Idaho law establishes a mandatory review system in which the state supreme court is required to examine the record on its own initiative in order to determine whether certain specified types of errors occurred during sentencing. This review occurs even if the defendant himself raises no claims of such errors, *see Osborn*, 631 P.2d at 192–93. Because the reviewing court has statutory notice of the types of errors for which it is required to examine the record, it is presumed that it has carried out its statutory obligations even when it does not expressly indicate in its opinion that it has done so. As a result, the court's affirmance of the defendant's sentence after mandatory review constitutes at least an implicit rejection of claims of error that fall within its obligatory review even if the defendant has not raised those claims with specificity. Other states have adopted mandatory review systems that differ in significant respects from Idaho's.[3]

Idaho is not the only Western state, however, to have adopted the requirement that its supreme court review death penalty sentences for specified types of error. Montana has mandatory review provisions that are identical in all relevant respects to Idaho's. In *Fitzpatrick v. State*, 194 Mont. 310, 638 P.2d 1002 (1981), the state supreme court construed those provisions, and explained the effect to be given its affirmance of a death sentence in light of them. The court held that its affirmance of a capital sentence constitutes an implicit rejection of all specific claims falling within the subject of its mandatory review authority and that any claim covered by the mandatory review statute must be deemed resolved against the defendant even if he did not raise that claim before the court and even if the court failed to address it in its opinion. *See id.*, 638 P.2d at 1014. It further held that when the defendant raises such an issue on post-conviction relief, a court may rely on the earlier affirmance as an implicit rejection of the contention (even though it was not raised by the defendant in the earlier appeal) and "need not review th[e] issue further." *Id.* We see no reason why the identical Idaho provisions

---

**3.** For example, some other states have adopted procedures that may be better described as "automatic appeal" requirements rather than mandatory review ones. *See, e.g.,* Cal.Penal Code §§ 1239(b); 1240.1(e)(1). Under the automatic appeal type of procedure, the defendant is forbidden to waive his appeal to the state supreme court. *See Massie v. Sumner*, 624 F.2d 72, 74 (9th Cir.1980), *cert. denied*, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981). However, the content of the appeal does not appear to be prescribed by statute, and affirmance by the court does not appear to require rejection of any particular claims on the merits. A procedural default arising from a failure to present a claim pursuant to this type of appellate process would raise different issues than are presented here.

would be construed any differently by the Idaho supreme court.

The United States Supreme Court considered the effect of state mandatory review provisions similar to Idaho's on procedural defaults in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake*, the defendant had failed to raise the claim that he was entitled to assistance of a psychiatrist in his motion for a new trial. Oklahoma argued that this failure was an independent and adequate state ground for the denial of relief so that the Supreme Court lacked jurisdiction to review the claim. The Court disagreed. Under Oklahoma law, the state supreme court on direct review was required to examine the trial record for "fundamental error"—including all constitutional errors—notwithstanding the defendant's failure to properly raise them. According to the Court, this review rendered subsequent application of the procedural bar "depend[ent] upon an antecedent ruling of federal law." As a result, the state procedural bar was not "independent" of federal law and federal review was not precluded. *Id.* at 75, 105 S.Ct. at 1092. The court's rationale was that because "the state court must rule, either explicitly or implicitly, on the merits of the constitutional question," *id.*, a subsequent procedural bar would be a consequence of that court's failure to uphold the federal claim.

Construed in light of the mandatory review provisions of § 19–2827, the Idaho Supreme Court's affirmance of Beam's death sentence

necessarily included not only a determination that none of the claims Beam raised had merit but further that his sentence of death was not based on any arbitrary factor. As reliance upon a petitioner's past non-violent, consensual or involuntary sexual conduct in violation of the Eighth Amendment would clearly constitute reliance on an arbitrary factor, *see infra* § II.B.2, the court "either explicitly or implicitly" concluded that the sentencing judge's application of the "continuing threat" aggravating factor did not violate the Eighth Amendment. Thus, here, as in *Ake*, application of the procedural bar depends upon an antecedent determination of federal law and does not constitute an independent and adequate state ground. Accordingly, Beam may challenge the application of the "continuing threat" aggravating factor in his federal habeas petition. *See Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir.1992).[4]

*2. Analysis*

In the trial court's Findings in Consideration of the Death Penalty, the finding that Beam posed a "continuing threat" to society followed immediately upon the finding that his "prognosis for any substantive rehabilitation is non-existent." *See Beam*, 766 P.2d at 700.[5] We see no way to separate the two findings. By definition, any individual who cannot be rehabilitated is a continuing threat to society. It would strain credulity to conclude that the trial judge stopped after the first finding, wiped its contents from his mind, and started afresh when he made the succeeding finding. To the contrary, a read-

---

4. We reject the State's argument that Idaho Code § 19–2719 barred the Idaho Supreme Court from conducting its own independent review of Beam's sentence pursuant to the requirements of Idaho Code § 19–2827. Section 19–2719 was enacted to consolidate all petitions for *state collateral relief* into a single state proceeding, along with the direct appeal. *See, e.g., State v. Card*, 121 Idaho 425, 825 P.2d 1081, 1086–87 (1991), *cert. denied*, — U.S. —, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992). Section 19–2719 did not alter in any way, however, the Idaho Supreme Court's *independent duty* under section 19–2827 to review each death sentence and to determine whether the sentence was "imposed under the influence of passion, prejudice, or any other arbitrary factor." For example, the Idaho Supreme Court applied section 19–2827 in *Beam* itself, *see Beam*, 710 P.2d at 534, to reach issues not raised

by the appellant. It is clear under Idaho law that section 19–2827 was not repealed or narrowed by section 19–2719. *See, e.g., State v. Hoffman*, 123 Idaho 638, 851 P.2d 934, 937, 943–45 (1993) (applying both sections 19–2719 and 19–2827); *Card*, 825 P.2d at 1086–87, 1094 (same); *State v. Paz*, 118 Idaho 542, 798 P.2d 1, 18–19 (1990) (same), *cert. denied*, — U.S. —, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991); *State v. Lankford*, 116 Idaho 860, 781 P.2d 197, 200–01 (1989) (same), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990).

5. The trial court found Beam incapable of being rehabilitated in section nine of its aggravating-factor discussion in the death penalty findings. The court then found Beam to be a continuing threat to society in section ten.

ing of the entire document persuades us that the two findings are inextricably linked, and that the elements which led the court to reach the first conclusion formed a basis for the second as well. The first of the two findings—and thus the second also—was based in substantial part on the fact that "[t]he defendant has a long history of deviant sexual behavior, including incest, homosexuality, and abnormal sexual relationships with women both older and younger than the defendant." *See id.* Therefore, unless that sexual history constitutes an appropriate basis for a finding that underlies the imposition of the death penalty, the "continuing threat" factor cannot stand.

We now examine the question to which our analysis of the Findings in Consideration of the Death Penalty has led us—whether the trial court's application of the "continuing threat" aggravating factor is violative of constitutional principles. The court's finding amounted to a determination that Beam's prior sexual history, consisting exclusively of non-violent, consensual or involuntary conduct, provides a valid penological basis for separating him from other capital defendants and placing him in the small group for which death is appropriate. The court found, in effect, that an individual who has been the victim of incest,[6] has engaged in homosexuality, and has had "abnormal sexual relationships with women both older and younger" may be singled out for execution on the theory that he is a greater risk to society than most other first degree murderers. We conclude that the trial court's finding violates the Eighth Amendment to the Constitution.

■ Under the Eighth Amendment, a state may not make application of the death penalty depend upon a particular characteristic of the offense or the offender if selection of such a characteristic "makes no measurable contribution to acceptable goals of punishment." *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality); *see Thompson v. Oklahoma,* 487 U.S. 815, 837–38, 108 S.Ct. 2687, 2700, 101 L.Ed.2d 702 (1988) (plurality); *Tison v. Arizona,* 481 U.S. 137, 149, 107 S.Ct. 1676, 1683, 95 L.Ed.2d 127 (1987); *Enmund v. Florida,* 458 U.S. 782, 798–801, 102 S.Ct. 3368, 3377–79, 73 L.Ed.2d 1140 (1982). As the Supreme Court noted in *Gregg v. Geor-*

*gia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), "[t]he death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders." *Id.* at 183, 96 S.Ct. at 2929–30 (joint opinion of Stewart, Powell, and Stevens, JJ.). In addition, the Court noted that the death penalty may also serve the purpose of the "incapacitation of dangerous criminals," *id.* at 183 n. 28, 96 S.Ct. at 2930 n. 28, and has approved consideration of a defendant's future dangerousness, *see Jurek v. Texas,* 428 U.S. 262, 274–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). Thus, before a state may base its decision to execute a defendant on a defendant's particular characteristics, the state must demonstrate that its reliance on such characteristics serves to further its interest in retribution, in deterrence, or in the elimination of those likely to kill again.

■ It is clear that using Beam's non-violent, consensual or involuntary sexual conduct as a basis for imposition of the death penalty serves no legitimate retributive purpose. The state may seek retribution only in relation to the blameworthiness of the actor in relation to the crime for which the state seeks to impose the death penalty. *See Tison,* 481 U.S. at 149, 107 S.Ct. at 1683. Although a capital defendant whose offense was motivated by a mercenary or racial animus might thereby be morally more culpable, *see, e.g., Barclay v. Florida,* 463 U.S. 939, 949, 103 S.Ct. 3418, 3424, 77 L.Ed.2d 1134 (1983) (plurality), no additional blame attaches to a capital defendant who has previously been the victim of incest, engaged in homosexuality, or had "abnormal" sexual relations with women of ages different than himself. Thus, regardless of whether such conduct is protected by the Fourteenth Amendment, the Eighth Amendment prevents the state from seeking retribution on the basis of Beam's prior sexual conduct. *Cf. Bowers v. Hardwick,* 478 U.S. 186, 197, 106 S.Ct. 2841, 2847, 92 L.Ed.2d 140 (1986) (Powell, J., concurring) (noting that although homosexual sodomy was not protected under the Fourteenth Amendment, imposition of substantial punishment for engaging in such activity "would create a serious Eighth Amendment issue"). Simply put, a state

---

**6.** According to the presentence report, Beam's father forced Beam and his retarded older brother to have sex with Beam's mother while Beam's father watched. If anyone refused, Beam's father would beat the recalcitrant party. *See* Presentence Report, at 6, 8.

may not use the death penalty as a mechanism for enforcing societal norms regarding sexual activity. *See, e.g.,* Note, *Constitutional Barriers to Civil and Criminal Restrictions on Pre- and Extramarital Sex,* 104 Harv.L.Rev. 1660, 1667–68 (1991) (discussing *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)).

Here, however, the state does not assert a retributive interest—or even a deterrent one—in Beam's sexual history but rather seeks to base a finding of future dangerousness on those events. When a state asserts a penological interest (here, future dangerousness) in conduct which it cannot punish directly, we must scrutinize its actions to ensure that they have an "appropriate relation to the safety of the state." *Herndon v. Lowry,* 301 U.S. 242, 258, 57 S.Ct. 732, 739, 81 L.Ed. 1066 (1937). Because the state may not impose the death penalty directly on the basis of a defendant's non-violent, consensual or involuntary sexual conduct, we must determine whether, as it asserts, Beam's particular sexual history is sufficiently related to the state's interest in the elimination of persons likely to commit future capital crimes that imposition of the death penalty on this basis is constitutionally permissible.

In *Dawson v. Delaware,* —— U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992), the Supreme Court recently scrutinized Delaware's imposition of the death penalty based in part on the defendant's membership in a racist prison organization. The Court first noted the state could not impose punishment directly for membership in the organization but that this prohibition does not necessarily preclude it from considering the defendant's membership if it is relevant to a permissible sentencing criterion. *See id.* at —— – ——, 112 S.Ct. at 1097–98. "[A]ssociational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future." *Id.* at ——, 112 S.Ct. at 1098.

The fact that associational evidence *might* be relevant to a defendant's future dangerousness was not, however, adequate to uphold its use in Dawson's case. The state had failed to introduce any evidence related to his membership that went beyond "mere abstract beliefs on Dawson's part"—beliefs shielded from punishment by the Constitution. *Id.* Because the state had failed to introduce evidence demonstrating a link between Dawson's membership and future harmful conduct, there was a substantial danger that the sentencer had considered his membership solely because it found that membership "morally reprehensible." For this reason, the Court said, if the state wished to rely on Dawson's membership in a racist prison organization, it was required to introduce evidence regarding that membership that went beyond abstract beliefs. *See id.*

We think the same is true when the state seeks to rely on a defendant's non-violent, consensual or involuntary sexual conduct as a basis for its decision to impose capital punishment. In such case, there is a substantial danger that the sentencer will be swayed by his own moral disapproval of the conduct and will not rationally and impartially consider the relevance of the conduct to the defendant's future dangerousness. To ensure that the conduct is properly considered, the state must introduce more than the mere facts of the defendant's sexual history; specifically, the state must, at the least, introduce evidence demonstrating a close link between that history and the defendant's future dangerousness.

In Beam's case, there was *no* evidence before the trial court supporting the existence of a link, close or otherwise, between the facts that he was the victim of incest, had engaged in homosexuality, or had had abnormal sexual relations with women of ages different than himself and the finding of future dangerousness. The psychological evaluation of Beam introduced in the sentencing hearing by the prosecution contains no suggestion that his sexual history indicated that he was likely to commit future violent acts. Nor does the presentence report draw a link between Beam's sexual experiences and a likelihood of future violence. Finally, there was no testimony to that effect during the hearing. In short, the trial judge's decision to draw a link between Beam's sexual experiences and future dangerousness was not based on any evidence of record.

To the contrary, the link appears to be the product of the trial judge's arbitrary preconceived attitudes. Beam's presentence report demonstrates that, prior to the charged offense, he was the victim of abusive sexual conduct and not an abuser himself. His incestuous relationship with his mother was forced upon him by his father. The only other indication in the record of force or violence in his sexual relations with others was an alleged incident in which an older woman with whom he was living supposedly "undressed him and tied him up [and] then brought ten girls to the house whereupon they all had sex with him." This incident is in all likelihood pure fantasy and in any event does not suggest that Beam was forceful or violent in his sexual behavior. In short, nothing in Beam's "long history of deviant sexual behavior" indicates a propensity for force or violence.

It goes without saying that society has abandoned its earlier belief that homosexuality presents a danger to the community. It should also go without saying that victims of incest may not be further punished by making their misfortune the basis for their subsequent execution. As in *Dawson*, the danger here is too great that the sentencer merely found the behavior "morally reprehensible." After reviewing the record, we are left with the firm conviction that the state court's finding on which it based its application of the "continuing threat" aggravating factor was simply the product of the court's moral disapproval of Beam's sexual experiences. We do not believe the Eighth Amendment permits the state to send a man to his doom for such a reason.

### 3. Retroactivity

The Supreme Court's holding in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not bar our conclusion that the trial court's application of the "continuing threat" aggravating factor violated the Eighth Amendment. Our holding that invalidates the state court's incapacitation rationale for Beam's death sentence, *see supra* pp. 1308–10, is based upon the rule established in *Herndon v. Lowry*, 301 U.S. at 258, 57 S.Ct. at 739, which was announced

nearly 50 years before Beam's state collateral attack became final.[7] As the Supreme Court has recently noted, a rule is not "new" simply because it is applied to a set of different facts. *See Stringer v. Black*, —— U.S. ——, ——, 112 S.Ct. 1130, 1135–40, 117 L.Ed.2d 367 (1992); *Wright v. West*, —— U.S. ——, ——, 112 S.Ct. 2482, 2499, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring) ("If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule."). Because we simply applied the general *Herndon* rule to the specific facts of this case, we conclude that our holding does not create a "new" rule. Moreover, the issue before us involves the substance of the criminal law, not a rule of criminal procedure. *See United States v. Sood*, 969 F.2d 774, 775 (9th Cir.1992) ("*Teague*, however, dealt with the retroactive application of a new constitutional rule of criminal procedure, not with the application of decisions affecting the substance of criminal laws. This court has recognized the distinction." (internal quotes omitted)).

Furthermore, even if our application of *Herndon* were "new," *Teague*'s bar against the application of new rules on a writ of habeas corpus does not apply to "rules forbidding criminal punishment of certain primary conduct" or "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). The state's interest in finality is not unduly hindered by retroactive application of such rules because " '[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.' " *Id.* (quoting *Mackey v. United States*, 401 U.S. 667, 693, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (opinion of Harlan, J.)).

Our Eighth Amendment holding in Beam's case falls squarely within both parts of the exception quoted above. With respect to the first part, our holding clearly forbids "criminal punishment of certain primary conduct"—namely criminal punishment of non-

---

**7.** As we mentioned above, *Herndon* stands for the proposition that any limitation upon individual liberty—for example, liberty from cruel and unusual punishment—must have an "appropriate relation to the safety of the state." *Id.*

violent, consensual, or involuntary past sexual acts. This conduct is precisely the kind of "private individual conduct" that is beyond the power of the state to proscribe through the death penalty. *Teague*, 489 U.S. at 307, 109 S.Ct. at 1180 (plurality opinion) (quoting *Mackey*, 401 U.S. at 693, 91 S.Ct. at 1180 (opinion of Harlan, J.)).[8] Where the death penalty is based in part on that conduct, the first part of the exception is applicable.[9] With respect to the second part, the Supreme Court has prohibited retroactive punishment based upon an individual's status, *see, e.g., Penry*, 492 U.S. at 330, 109 S.Ct. at 2952–53 (mental retardation); *Ford v. Wainwright*, 477 U.S. 399, 410, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (insanity), or his offense, *see, e.g., Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (plurality opinion) (rape). Like those cases, our holding also simply prohibits "a certain category of punishment," i.e., the death penalty, "for a class of defendants because of their status or offense," i.e., where the penalty is based in part on the type of sexual practices we have described.

### 4. The Remedy For the State's Unconstitutional Action

Under Idaho law, the state court in a capital case determines the appropriateness of the death penalty in a particular case by weighing the aggravating circumstances against the mitigating ones. *See* Idaho Code § 19–2515.[10] When the death penalty has been imposed as a result of such a weighing process, the subsequent elimination as invalid of one of the aggravating factors alters the balance and, as a result, renders the state court's prior determination that death is the appropriate penalty unreliable. *See Clemons v. Mississippi*, 494 U.S. 738, 751, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725 (1990). Thus,

our determination that an aggravating factor relied on by the Idaho court was unconstitutional as applied would ordinarily require us to vacate the death sentence. *See Creech*, 947 F.2d at 885, *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993).

In this case, however, the trial court also found that, as a result of Beam's poor chances for rehabilitation, "any one of the aggravating circumstances found by this Court to exist outweighs the mitigating circumstances." The state argues that this additional finding requires us to uphold Beam's death sentence even if the state court's application of one of the aggravating factors was unconstitutional. The additional finding, however, is subject to the identical constitutional objection that required us to invalidate the "continuing threat" determination. The additional finding, like the "continuing threat" determination, was founded upon the court's impermissible reliance upon Beam's past non-violent, consensual or involuntary sexual conduct, *see, e.g., Beam*, 766 P.2d at 700 (discussing Beam's "non-existent" prognosis for rehabilitation); discussion *supra* § II.B.2. Thus, we conclude that the additional finding also violates Beam's rights under the Eighth Amendment.

In sum, the trial judge's finding that Beam's sexual history demonstrated that there was no possibility of rehabilitation is invalid. As that finding served as a basis for the court's conclusion that any one aggravating circumstance would outweigh all of the mitigating circumstances, that conclusion is also invalid. The only other basis on which the state court determined that Beam deserved the death penalty was its finding that all three aggravating circumstances, when combined, outweighed all the mitigating ones. However, we have already determined that,

---

**8.** *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), is not to the contrary. There, the Court held that the "primary conduct" exception to *Teague* was inapplicable because the "new" rule in that case—involving *Miranda* warnings—did not forbid criminal punishment for any primary conduct on the part of the petitioner. *Id.* at 415, 110 S.Ct. at 1217–18. By contrast, the "new" rule in this case clearly forbids criminal punishment for "certain primary conduct" on the part of the petitioner—namely his non-violent, consensual, or involuntary past sexual acts.

**9.** *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), is not to the con-

trary. *Hardwick* held that there is no fundamental right to engage in sodomy under the substantive Due Process Clause. However, the Court left open the possibility that punishment for such acts would violate the Eighth Amendment. *See id.* at 197, 106 S.Ct. at 2847 (Powell, J., concurring) ("In my view, a prison sentence for [sodomy]—certainly a sentence of long duration—would create a serious Eighth Amendment issue."). Because our holding is based on the Eighth Amendment, *Hardwick* is not applicable.

**10.** As we subsequently explained in *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir.1993), Idaho Code § 19–2515(c) requires *each* aggravating factor to be weighed separately against all mitigating factors. *See Fetterly*, 997 F.2d at 1297

when weighing all the aggravating and mitigating factors together, the state court impermissibly applied the "continuing threat" aggravating circumstance. Accordingly, we cannot rely on the balancing of aggravating and mitigating circumstances performed in Beam's case, and his death sentence—which resulted from an invalid weighing of factors—must be vacated. *See Creech,* 947 F.2d at 885, *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993).[11]

### Conclusion

We affirm, for purposes of this appeal, the district court's denial of Beam's claim that the use of the dual jury system violated his constitutional rights. We reverse the district court's conclusion that the trial court's application of the "continuing threat" aggravating factor used in Beam's sentencing was not unconstitutional. We remand the case to the district court and direct it to grant the petition · on the ground that the state trial court committed constitutional error when it improperly found an aggravating circumstance based upon Beam's non-violent, consensual or involuntary sexual history and then concluded that, as a result of his poor chances of rehabilitation, any single aggravating circumstance would be sufficient to outweigh all mitigating circumstances. The sentence will be vacated, and the state court will conduct new sentencing proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.

### ORDER

#### Dec. 7, 1993.

The opinion filed on November 16, 1993, is amended as follows:

[Editor's Note: The amendments are incorporated into the published opinion.]

The "Amended" Petition for Rehearing with Suggestion for Rehearing En Banc is DENIED as moot. The Petition for Rehearing has been denied, and the Suggestion for Rehearing En Banc has been rejected. *See*

*Beam v. Paskett,* No. 90–35616 (9th Cir. Dec. 6, 1993) (order denying and rejecting).

Moreover, Respondent–Appellee has defaulted with respect to its amended petition. The only difference between the amended petition and the original petition is a single paragraph on why *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937), is a "new rule." *Compare* "Amended" Petition, at 5–6 (filed Nov. 22, 1993) (paragraph on *Herndon) with* Original Petition, at 5 (filed Sept. 16, 1993) (no paragraph on *Herndon).* The paragraph on *Herndon* relates to the court's original opinion, not to its amended opinion. *See Beam v. Paskett,* 3 F.3d 1301, 1310 (9th Cir.1993) (original opinion on remand) ("As such, [*Herndon v. Lowry*] is by no means a 'new rule.' "). Because Respondent–Appellee failed to include the argument in its original petition, we will not permit it to be made in a subsequent petition.

---

(discussing *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989)).

**11.** Beam also claims Judge Lodge was incapable of objectively considering his sentencing claims and that this denied him his constitutional right to an impartial judge both at sentencing and at the time of his post-conviction hearing. Because

we vacate Beam's sentence on other grounds, we need not reach this claim. We note however, that Beam would be free to reassert this claim were Judge Lodge to preside over his resentencing. We decline to consider the claim in advance only because Judge Lodge has left the state bench.