**Ricky David SECHREST, Petitioner,**

v.

**John IGNACIO et al., Respondents.**

**No. CV–N–92–0536–ECR.**

United States District Court,
D. Nevada.

July 29, 1996.

Robert Bruce Lindsay, Reno, NV, for Petitioner.

Robert Wieland, Attorney General's Office, Carson City, NV, for Respondents.

### ORDER

EDWARD C. REED, Jr., District Judge.

Presently before the court for decision is Respondents' Motion to Dismiss the Second Amended Petition for a Writ of Habeas Corpus (Doc. # 74) filed by Petitioner Ricky David Sechrest, a prisoner in state custody under a sentence of death.

On the afternoon of May 14, 1983 Petitioner Ricky David Sechrest convinced ten-year-old Maggie Schindler and her playmate Carly Villa to drive with him to Logomarsino Canyon, Nevada. In the hills above the canyon Sechrest attacked the two girls, using the edge of a shovel against their skulls, killing them. After Maggie Schindler was dead, Sechrest sexually abused her body, and then buried the two girls in shallow graves.

When their bodies were discovered by accident some three weeks later, Sechrest, whose grandmother had often babysat Maggie Schindler, was questioned by officers of the Reno Police Department. During the course of that interview Sechrest admitted abducting and attacking the children. *See* Respondents' Ex. 68.

By information filed June 24, 1983 in the Judicial District Court for Washoe County, Nevada, Sechrest was charged with the kidnapping and murder of Carly Villa and Maggie Schindler. Respondents' Ex. 1. Following trial, on September 19, 1983, the jury convicted Ricky David Sechrest of two counts of murder in the first degree and two counts of kidnapping in the first degree. At the "penalty phase" of the trial, on September 27, 1983, the jury sentenced Sechrest to death for each murder. The trial judge imposed two additional sentences of life imprisonment without possibility of parole for the kidnappings.

Sechrest, through counsel, appealed from the judgment of the trial court. On August 27, 1985 the Nevada Supreme Court affirmed the convictions, the prison sentences, and the sentences of death. *Sechrest v. State,* 101 Nev. 360, 705 P.2d 626 (1985). In November 1985 Sechrest filed a petition for post-conviction relief in the state trial court, which was denied. The Nevada Supreme Court affirmed the denial of Sechrest's petition for post-conviction relief. *Sechrest v. State,* 108 Nev. 158, 826 P.2d 564 (1992).

In August 1992 Sechrest first sought federal habeas relief through the filing of a petition in this court (Doc. # 1). The court permitted Sechrest to amend his petition (Docs. ## 21, 37, 41); by Order of this court dated September 25, 1995 (Doc. # 69) the first amended petition was dismissed and Petitioner was permitted to file a second amended petition, which he did file on October 27, 1995 (Doc. # 70).

■ Respondents argue in their Motion to Dismiss the Second Amended Petition (Doc. # 74) that Petitioner has so far failed to exhaust his state-court remedies. Unless Petitioner has exhausted his state-court remedies, this court may not grant Petitioner the writ he seeks. 28 U.S.C. § 2254(b) and (c).

Respondents maintain that none of the claims for habeas relief presented in the Second Amended Petition has yet been exhausted in the state courts. As the court previously noted in its Order dated September 25, 1995 (Doc. # 69), dismissing the First Amended Petition, Petitioner Sechrest has sought and been denied relief both on direct appeal, and on collateral review. *Sechrest v. State,* 101 Nev. 360, 705 P.2d 626 (1985) (affirming judgment of conviction); *Sechrest v. State,* 108 Nev. 158, 826 P.2d 564 (1992) (affirming denial of state petition for post-conviction relief).

In order to satisfy the exhaustion requirement, a particular claim asserted in a petition for federal habeas relief under 28 U.S.C. § 2254 must first be "fairly presented" to the highest court of the state whose court issued the judgment of conviction. *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Schwartzmiller v. Gardner,* 752 F.2d 1341, 1344 (9th Cir.1984). A claim has been "fairly presented" to the state court if the petitioner has described the operative facts *and* the legal theory upon which he bases his constitutional claim. *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir.1986); *Hayes v. Kincheloe,* 784 F.2d 1434, 1437 (9th Cir.1986), *cert. denied,* 484 U.S. 871, 108 S.Ct. 198 (1987). A federal habeas court may not proceed to address the merits of a habeas petition which contains even a single unexhausted claim. *Rose v. Lundy,* 455 U.S. 509, 518–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Szeto v. Rushen,* 709 F.2d 1340, 1341 (9th Cir.1983).

The Second Amended Petition (Doc. # 70) presents no fewer than thirty-five distinct claims of violations of Petitioner's constitutional rights, some of which allegedly occurred at the guilt phase of trial, some at the penalty phase, and some on direct appeal from the judgment of conviction. It is Petitioner who must shoulder the burden of proving to the satisfaction of this court that those claims have been exhausted in the courts of the State of Nevada. *Williams v. Craven,* 460 F.2d 1253 (9th Cir.1972).

On direct appeal of his conviction to the Nevada Supreme Court, Petitioner assigned as error (1) the trial court's refusal to appoint a him second attorney to represent him at trial, (2) the admission in evidence of his self-incriminating statements to the Reno police, and (3) the prosecutor's remarks during argument regarding the possibility that Sechrest might be eligible for executive clemency. Appellant Opening Brief on Direct Appeal at 1, Respondents' Ex. 67.

■■■■ On appeal from the state court's denial of his petition for post-conviction relief, Sechrest claimed violations of his Sixth Amendment right to effective assistance of counsel for his defense.[1] Sechrest alleged that his appointed trial counsel had rendered constitutionally ineffective assistance through (1) failing to interview psychiatrist Lynn Gerow before he testified for the state at the penalty phase of the trial[2]; (2) failing to object to the state's use of Gerow's testimony during cross-examination of other witnesses and in closing argument; (3) improperly eliciting, through cross-examination of Dr. Gerow at the penalty phase, evidence of Sechrest's incurable, immutable sociopathy, to the detriment of the defense case; and (4) failing to seek to bar Dr. Gerow's testimony with respect to Sechrest's prior criminal behavior under the doctor-patient privilege, the attorney-client privilege, or the defendant's Fifth Amendment right against self-incrimination. Appellant Opening Brief on Appeal from Denial of Petition for Post–Conviction Relief, Respondents' Ex. 105.

Of the thirty-five claims raised by Petitioner in his Second Amended petition, it appears that only three can be said to have been "fairly presented" to the state supreme court. These exhausted claims are. (1) that he was denied a fair trial by the trial court's denial of Petitioner's request for the appointment of a second attorney, in violation of his right under the Sixth Amendment to the U.S. Constitution to effective assistance of counsel for his defense (Appellant Opening Brief on Direct Appeal, Respondents' Ex. 67, at 6); (2) that he was denied a fair trial by the prosecutor's misconduct in arguing to the jury during the penalty phase of the trial that because of the possibility of executive clemency, the only certain way to protect society from Petitioner was to execute him, in violation of his Fourteenth Amendment right to due process of law (Appellant Opening Brief on Direct Appeal, Respondents' Ex. 67, at 25–26); and (3) that the admission in evidence of Petitioner's incriminating statements to police violated his Fifth Amendment right against self-incrimination (Appellant Opening Brief on Direct Appeal, Respondents' Ex. 67, at 19).

On appeal from the denial of his petition for post-conviction relief in state court Petitioner claimed that trial counsel's failure to object to the testimony of defense psychiatric expert Dr. Gerow during the penalty phase constituted a violation of Petitioner's Sixth Amendment right to effective assistance of counsel (Appellant Opening Brief on Appeal from Denial of Post–Conviction Relief, Respondents' Ex. 105, at 5). The Second Amended Petition reiterates Sechrest's Sixth Amendment claim with respect to defense counsel's failure to object to the admission of Dr. Gerow's testimony on behalf of the State during the penalty phase of the trial (Second Amended Petition for Writ of Habeas Corpus, Doc. # 74, at 14). The Second Amended Petition also contains a claim that the admission of Gerow's testimony constituted a violation of Petitioner's Fifth Amendment right against self-incrimination (*Id.*). No Fifth

---

1. The fact that a petitioner may have raised some claim of ineffective assistance of counsel will not, in and of itself, satisfy Section 2254(c)'s requirement that a claim be exhausted in state court before a federal habeas court may address the merits of the claim. The "fair presentation" requirement is satisfied only where the facts of each occurrence allegedly resulting in ineffective assistance were set before the state supreme court. *See Levasseur v. Pape,* 70 F.3d 187 (1st Cir.1995).

2. Gerow was initially appointed by the trial court as a psychiatric expert at the request of defense counsel, to render an evaluation of Sechrest's mental health. Dr. Gerow examined the defendant and submitted a report of his findings to defense counsel. The defense never called Gerow to testify at either phase of the trial. During the penalty phase Gerow was called to testify by the state, to which defense counsel did not object. *Sechrest v. State,* 108 Nev. 158, 826 P.2d 564 (1992).

Amendment claim regarding Dr. Gerow's testimony appears in Sechrest's petition in state court for post-conviction relief. It thus appears that Petitioner has failed to exhaust his Fifth Amendment claim with respect to Dr. Gerow's testimony: A claim is "fairly presented" only where both the facts and operative legal theory are set before the state court. *Duncan v. Henry,* — U.S. —, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

On the other hand, it appears from the decision of the Nevada Supreme Court on appeal from the denial of his state petition for post-conviction relief that Sechrest did argue to that court that the admission in evidence at the penalty phase worked a Fifth Amendment violation. *Sechrest v. State,* 108 Nev. 158, 826 P.2d 564 (1992). That the court refused to apply Fifth Amendment analysis to the claim regarding Dr. Gerow's testimony is irrelevant: The Nevada Supreme Court does appear to have been presented with that claim.

As for the other thirty-one claims presented in his Second Amended Petition, there is no indication in the record that Petitioner ever presented any of these claims to the state supreme court. Those claims remain unexhausted. As a "mixed" petition, the court must order its dismissal pursuant to 28 U.S.C. § 2254(c).

■ Petitioner seeks to forestall this result. He argues that the Nevada statute providing for mandatory review of certain aspects of a criminal case where the defendant has been sentenced to death relieves him of the obligation under the rules of federal habeas practice to present those issues to the state's highest court.[3] Petitioner relies for this strange argument on *Beam v. Paskett,* 3 F.3d 1301 (9th Cir.1993) (Reinhardt, J.), *cert. denied,* — U.S. —, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994). Petitioner cites *Beam* as "controlling authority" for the proposition that mandatory review by a state supreme court operates to "exhaust"

state remedies for federal constitutional violations which may have occurred at trial in the state court. *Beam* stands for no such broad proposition. In that case, the penalty phase jury had found that the defendant posed a "continuing threat" to public safety; the existence of such a "continuing threat" constituted an aggravating factor supporting the imposition of the death sentence. Because the federal appellate court concluded that the penalty phase jury might, at least in part, have relied for its finding that the defendant posed a "continuing threat," on the defendant's prior nonviolent consensual sexual behavior, and because such reliance might have constituted both an "arbitrary factor" under the state mandatory review statute and a violation of the Eighth Amendment to the U.S. Constitution, the court reasoned that the state supreme court must implicitly have considered and rejected an Eighth Amendment claim.

As a preliminary matter, the entire discussion in *Beam* of the "exhaustion" effect of the state mandatory review statute is obiter dicta: In the paragraphs preceding that discussion the court found that the petitioner *had* "fairly presented" his federal constitutional claims to the Idaho Supreme Court. The subsequent reasoning was therefore irrelevant to the court's conclusions.

Second, even assuming the discussion in *Beam* of the effect of the mandatory review statute to be binding precedent rather than dicta, this court fails to understand how an implicit finding by a state appellate court that a death sentence was not imposed in violation of one or more of the factors required to be reviewed under the mandatory review statute *necessarily* implies a rejection of *federal constitutional claims.* The rules of federal habeas practice require a petitioner to exhaust his state-court remedies by permitting the state tribunals to address claims of federal constitutional violations.

---

**3.** Nev.Rev.Stat. § 177.055 requires the Nevada Supreme Court to review a death sentence with respect to (1) all "enumerated errors," i.e. those actually assigned as error by the defendant-appellant, (2) the sufficiency of the evidence supporting the penalty phase jury's finding of the aggravating factors supporting the death sen-

tence, (3) the question whether the death sentence may have been imposed as a result of passion, prejudice, or any other arbitrary factor, and (4) whether, considering the person of the defendant-appellant and the nature of the crime, the sentence of death was excessive.

The provisions of the mandatory review statute do not require, either on their face or implicitly, that the state supreme court address potential violations of federal law. The present situation is thus quite different from the situation in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (*cited in Beam,* 3 F.3d at 1307). In *Ake,* the Oklahoma mandatory review statute required review of "fundamental errors," which, under Oklahoma law, included federal constitutional violations. *Ake,* 470 U.S. at 75, 105 S.Ct. at 1092 (citing *Buchanan v. State,* 523 P.2d 1134, 1137 (Okla.Crim.App.1974)).

Quite sensibly the U.S. Supreme Court recognized in *Ake* that if state law required the state supreme court to undertake review for federal constitutional error as well as state-law error, then the affirmance of the trial court *necessarily* implied a rejection of all potential federal constitutional claims, including those not raised by the petitioner.

No Nevada court has construed the Nevada mandatory review statute to require the Nevada Supreme Court to undertake *sua sponte* inquiry into potential violations of federal constitutional law. Because a claim is not "fairly presented" to a state appellate court unless the state court is apprised of both the facts *and* the appropriate federal constitutional nature of the claim, Nevada's mandatory review statute cannot, even under *Beam,* excuse Petitioner's failure to exhaust his state-court remedies for alleged federal constitutional wrongs. *See Nave v. Delo,* 22 F.3d 802, 816 (8th Cir.1994) (ruling federal constitutional error to be outside scope of Missouri mandatory review statute, essentially identical to Nev.Rev.Stat. § 177.055), *cert. granted and judgment vacated on other grounds,* —— U.S. ——, 115 S.Ct. 1086, 130 L.Ed.2d 1057 (1995).

■ Finally, even if Petitioner's argument under *Beam* is correct, its application in the present action would violate the principle which bars retroactive application of a new rule of law to cases pending only on collateral review at the time of the announcement of the new rule. *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). Petitioner's conviction became final on August 27, 1985. The rule Petitioner urges the court to apply was first announced in 1992. *Beam v. Paskett,* 966 F.2d 1563 (9th Cir.1992), *cert. granted and judgment vacated on other grounds sub. nom. Arave v. Beam,* 507 U.S. 1027, 113 S.Ct. 1837, 123 L.Ed.2d 464 (1993). Neither exception to the rule barring retroactive application of new rules of constitutional criminal procedure to cases no longer pending on direct review at the time of the announcement of the rule applies. The rule announced in *Beam* neither places any type of "primary, individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague, id.* at 311, 109 S.Ct. at 1075–76 (citing *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1171, 1179, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)), nor announces any "watershed rule of criminal procedure." *Teague, id.* Therefore, even assuming the correctness of Petitioner's argument under *Beam v. Paskett,* this court cannot, under the retroactivity principles described by Justice O'Connor in *Teague v. Lane,* apply *Beam*'s "implied presentation" concept to Petitioner's federal habeas petition.

■ The Second Amended Petition is thus a "mixed" petition, containing several federal constitutional claims which have been fairly presented to the Nevada Supreme Court, and containing dozens of federal constitutional claims upon which the state supreme court has not yet had an opportunity to rule. Ordinarily, a federal habeas court must dismiss such a petition. 28 U.S.C. § 2254(c); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). But under the federal habeas statute, a claim is unexhausted only where the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented" by the claim in question. 28 U.S.C. § 2254(c). Before dismissing a petition for a writ of habeas corpus on non-exhaustion grounds under Section 2254(c), a federal habeas court is "authorized, indeed required, to assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Harris v. Reed,* 489 U.S. 255, 268, 109 S.Ct. 1038, 1046, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring).

■ In the present case, it does appear doubtful that Petitioner might yet prevail upon the courts of the State of Nevada to address the unexhausted claims presented in the Second Amended Petition. In Nevada, where more than five years elapse between the decision on direct appeal from the judgment of conviction and the filing of a petition for post-conviction relief, there exists a rebuttable presumption of prejudice to the State, thus subjecting the petition to dismissal on the ground of laches. Nev.Rev.Stat. § 34.800. Moreover, a Nevada trial court presented with a petition for post-conviction relief *must* dismiss the petition if the grounds for relief could have been presented in any prior proceeding, whether at trial, on direct appeal, or on collateral review. Nev. Rev.Stat. § 34.810(1)(b). Only a showing by the successive petitioner of both good cause for failing to present the claim earlier and actual prejudice resulting from the error challenged in the untimely claim will save it from dismissal. *Id.* Finally, a second or successive petition for post-conviction relief which contains new or different grounds from the prior petition must be dismissed if the court to whom the second or successive petition is presented determines that the failure of the petitioner to assert those new or different grounds in the original petition constitutes an abuse of the writ. Nev.Rev.Stat. § 34.810(2).

The foregoing state rules governing petitions for post-conviction relief would appear to throw substantial obstacles in Petitioner's path should this court dismiss the Second Amended Petition on non-exhaustion grounds. But those are obstacles of Petitioner's own making. If, in fact, Petitioner no longer retains the right to raise his unexhausted claims in state court, it is because petitioner has failed to comply with state procedural law governing habeas relief. If a federal constitutional claim can no longer be raised in the state courts because of a failure to follow the prescribed procedure for pre-

senting it, the claim is procedurally barred and the federal habeas court must deny the petition. *Johnson v. Lewis,* 929 F.2d 460, 463 (9th Cir.1991) (citing *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986)); *Tacho v. Martinez,* 862 F.2d 1376, 1378 (9th Cir.1988)).

Under the old "deliberate bypass" rule of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the petitioner could force a federal habeas court to address the merits of claims never presented to any state tribunal if the state could not show that the petitioner had deliberately forsaken his state-law remedies. The rule of *Fay,* however, is no longer the law of federal habeas relief. Under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the federal habeas court may reach the merits of the claims never presented to the state court only if the petitioner can show "cause" for his procedural default and "prejudice" from the error challenged in the federal habeas petition.[4]

Clearly, the result for Petitioner will be the same whether the Second Amended Petition is dismissed for non-exhaustion under Section 2254(c) or this court finds a state procedural default: Whether in state of federal court, Petitioner will have to demonstrate "cause and prejudice" before the unexhausted claims contained in the Second Amended Petition may be addressed on their merits. *See Coleman v. Thompson,* 501 U.S. 722, 735 fn. 1, 111 S.Ct. 2546, 2557 fn. 1, 115 L.Ed.2d 640 (1991); *Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989); *Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Grey v. Hoke,* 933 F.2d 117 (2d Cir.1991). Respondents urge the court to find a procedural default on the grounds that Petitioner failed to present most of the claims in the Second Amended Petition to the Nevada Supreme Court and that at this late date a Nevada court would

---

4. The demonstration of cause and prejudice is not required in a case where a constitutional violation has probably resulted in the conviction of a person who is actually innocent. *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner Sechrest makes

no claim that he is innocent of the murders of Carly Villa and Maggie Schindler, therefore that exception does not apply. *See* Appellant Opening Brief on Direct Appeal, Respondents' Ex. 67, at 14.

refuse to reach the merits of those claims. It is true that a federal habeas court need not dismiss on exhaustion grounds where "it is clear that the state court would hold [the unexhausted claims] procedurally barred." *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989).

It has been held that a federal court should refuse to proceed on a petition for a writ of habeas corpus on exhaustion grounds only if there is some reasonable probability that state relief will actually be available; a petitioner for federal habeas relief need not pursue speculative or purely conjectural state remedies. *Matias v. Oshiro,* 683 F.2d 318, 320 (9th Cir.1982) (citing *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (per curiam). Even if the petitioner has utterly failed to present his federal claims to the state courts exhaustion will be found where "[i]t is clear that collateral relief would be unavailable to petitioner" in the state courts. *Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 1068–69 (1989). But in *Matias,* the petitioner had almost certainly waived any claims not raised in his original state-court petition for post-conviction relief: Under Hawai'i Rule of Penal Procedure 40(a) successive claims for post-conviction relief are barred unless they could not have been raised earlier, or the failure to raise them in the earlier petition was unintentional, or there exist "extraordinary circumstances" justifying the failure to raise the new claims in the earlier petition. *Matias, id.* Likewise, in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Ohio post-conviction relief statute deemed irretrievably waived any ground for relief not made in the original petition. *See* Ohio Rev.Stat. § 2953.21(A) (*cited in Engle,* 456 U.S. at 125 n. 28, 102 S.Ct. at 1570 n. 28).

■ While the court recognizes that if the Second Amended Petition is dismissed pursuant to 28 U.S.C. § 2254(c), the likelihood that Petitioner would be able to show "cause and prejudice" sufficient to entitle him to a hearing on the merits in state court under Nev. Rev.Stat. § 34.810(1) may be small, it is not nonexistent. The court will not assume, as Respondents urge the court to do, that Petitioner could not persuade a Nevada court to reach the merits of the unexhausted claims contained in the Second Amended Petition. To do so would be to ignore the twin purposes of the exhaustion doctrine, *viz.* (1) the consideration due a sovereign State's courts' efforts to right federal constitutional wrongs and (2) the advantage, on federal habeas review, of a record fully developed in prior habeas proceedings in the state system. *Harris v. Reed,* 489 U.S. at 268–69, 109 S.Ct. at 1046–47 (O'Connor, J., concurring).

■ Finally, Respondents in their Motion to Dismiss (Doc. # 74) spill considerable ink arguing that the Second Amended Petition is subject to dismissal as an abuse of the Great Writ under Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. Rule 9 has no application to the present action: The rule permits a federal habeas court, under certain circumstances, *see Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), to dismiss a second *federal* habeas petition following an adjudication, on the merits, of a previous federal habeas petition. Here, only Petitioner's state habeas petition has been decided on the merits. The dismissal of the first federal petition per Order of this court dated September 25, 1995 (Doc. # 69) does not amount to an adjudication on the merits; the Second Amended Petition therefore in no way constitutes a "second" or "successive" petition within the meaning of Rule 9(b). *Caro v. Vasquez,* 789 F.Supp. 315, 319 (N.D.Cal.1992) (citing *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 1466–67, 113 L.Ed.2d 517 (1991)).

For the foregoing reasons, *IT IS THEREFORE ORDERED* that Respondents' Motion to Dismiss (Doc. # 74) is *HEREBY GRANTED.*

*IT IS FURTHER HEREBY ORDERED* that the Second Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 70) *IS DISMISSED.*

*IT IS FURTHER HEREBY ORDERED* that the Clerk shall enter judgment accordingly.