**Michael K. POLAND, Petitioner–Appellant,**

v.

**Terry STEWART,\* Director, Arizona Department of Corrections, Respondent–Appellee.**

**No. 95–99022.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 23, 1996.

Decided Aug. 9, 1996.

---

\* Terry Stewart is substituted for Samuel A. Lewis, his predecessor, as Director, Arizona Department of Corrections, pursuant to F.R.A.P. 43(c).

Patrick E. McGillicuddy, Phoenix, Arizona, for petitioner-appellant.

Kent E. Cattani, Assistant Attorney General, Phoenix, Arizona, for respondent-appellee.

Before: HUG, Chief Judge, BROWNING and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Arizona death row inmate Michael K. Poland appeals the district court's denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

## I

### FACTS AND PROCEDURAL HISTORY

Michael Poland (Poland) and his brother Patrick (Patrick) were convicted in Arizona state court in 1980 of the 1977 murders of two armored car drivers and sentenced to death. The convictions arose from the May 1977 hijacking and robbery of an armored car during which the two armored car drivers were murdered. The convictions were overturned by the Arizona Supreme Court on the basis of jury misconduct. *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982), *In banc (Poland I ).*[1]

When the case returned to the Arizona Superior Court (trial court) following the reversal in *Poland I,* the newly elected county prosecuting attorney moved to dismiss the charges on the basis that there was insufficient evidence on which to proceed to trial. The trial court denied the motion and a subsequent motion for reconsideration.

After denial of the motions, counsel for the Polands moved to disqualify the trial judge for bias. The motion was referred to another judge of the Arizona Superior Court, who found no bias and denied the motion.

At the time of the second state prosecution, the Polands were in federal penitentiaries serving their sentences. They were transferred to the custody of the State of Arizona where they have remained. After the second state prosecution, the Polands were again convicted of murder and sentenced to death. The convictions and sentences were upheld on appeal by the Arizona Supreme Court, *State v. Patrick Poland,* 144 Ariz. 388, 698 P.2d 183 (1985), *In Banc,* and *State v. Michael Poland,* 144 Ariz. 412, 698 P.2d 207 (1985), *In Banc,* and by the Supreme Court of the United States on certio-

rari, *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986).

Poland's first post-conviction relief (PCR) petition, as amended, was denied by the trial court, and the Arizona Supreme Court denied review without comment. Poland then filed a petition for a writ of habeas corpus in federal district court. While that was pending, he filed a second PCR petition in the trial court. The trial court held that all but three claims were precluded under the applicable state rules governing PCR proceedings. The claims in the second PCR petition became the basis of the amended habeas petition which the district court denied. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and § 2253, and we affirm.

## II

### EFFECT OF NEW LEGISLATION

The Antiterrorism and Effective Death Penalty Act of 1996 was signed by President Clinton on April 24, 1996. (110 Stat 1214) The parties have briefed and argued issues related to the applicability of certain provisions of the Act to this case. However, the outcome of this case would not be affected by application of the Act, so we need not decide the extent, if any, to which its provisions apply to this case.

## III

### ISSUES RESOLVED ON THE MERITS

A. *State Jurisdiction to Carry out the Sentence.*

■ Relying on the Supremacy Clause, separation of powers, and Amendments V, VIII and XIV to the Constitution, Poland contends that he cannot be executed by Arizona until his federal sentence has "expired."[2] He cites *Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922), for its general holding that the court which

---

1. The brothers had been previously convicted of robbery and kidnapping in federal court and given sentences totalling 100 years. *United States v. Poland,* 659 F.2d 884 (9th Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981).

2. Poland does not cite or rely on the Interstate Agreement on Detainers, 18 U.S.C.S.App. 2 § 1.

takes control of the subject-matter of the litigation is to be "permitted to exhaust its remedy to attain which it assumed control." *Id.* at 260, 42 S.Ct. at 310.

However, *Ponzi* does not support Poland's premise. *Ponzi* addressed the question of transfer of a prisoner from one sovereign to another for purposes of trial. The Supreme Court held that the Attorney General could yield custody of a federal prisoner for purposes of trial in a state court. It by no means implied that the Attorney General's authority was limited to a short release for trial. The Court's decision rested on each sovereign's interest in vindicating its laws and the fact that the question was committed to the discretion of the sovereigns:

> [A defendant] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. [Citation omitted] Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it.

*Id.*

Thus, the Attorney General retains broad powers over prisons and prisoners. *Id.* at 261–263, 42 S.Ct. at 311–12. The Attorney General may, at her discretion, waive the federal sovereign's strict right to exclusive custody of a prisoner and transfer a federal prisoner to a state sovereignty to enable the state to subject the prisoner to conviction for a crime against it. *Id.* at 260–61, 42 S.Ct. at 310–11. *See also United States v. Warren,* 610 F.2d 680, 685 (9th Cir.1980):

> [T]he sovereign with priority of jurisdiction, here the United States, may elect under the doctrine of comity to relinquish

it to another sovereign. This discretionary election is an executive, not a judicial, function. . . . In the federal system, the power and discretion to practice comity is vested in the Attorney General.

(Citing *Ponzi* ) (internal quotation omitted).

The State suggests that Poland lacks standing to challenge the Attorney General's decision to leave him in state custody. This contention has some merit. In *Stamphill v. Johnston,* 136 F.2d 291, 292 (9th Cir.), *cert. denied,* 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457 (1943), we said: "as pointed out by the Supreme Court in [*Ponzi* ] the arrangement made between the two sovereigns, the state and federal governments, does not concern the defendant who has violated the laws of each sovereignty and he cannot in his own right demand priority for the judgment of either." *See also Gunton v. Squier,* 185 F.2d 470, 471 (9th Cir.1950): "It is well recognized rule of law that a person who has violated the criminal statutes of both the Federal and State Government may not complain of the order in which he is tried or punished for such offenses."

Whether or not the issue is analyzed as one of standing, it is clear that Poland's contention has no merit. It is the Attorney General's job to exercise the authority of the United States over federal prisoners. If she chooses to leave Poland in the custody of the State of Arizona, neither Poland nor this court is in a position to say she lacks the authority under the Constitution to do so. "The penitentiary is not a place of sanctuary." *Ponzi,* 258 U.S. at 264, 42 S.Ct. at 312.

B. *The Pecuniary Gain Aggravating Circumstance.*

Poland argues that the Arizona statutes gave him insufficient notice that he could be sentenced to death for a murder committed in the course of a robbery.[3] He points out that the trial court itself, in the first sentencing, interpreted the pecuniary gain aggrava-

---

Nor does he argue the existence of any statutory impediment to the Attorney General's ability to leave Poland in the custody of the State of Arizona.

**3.** At that time, what is now found at A.R.S. §§ 13–703(F)(4) and (F)(5) provided, as aggrava-

ting factors which could result in the imposition of the death penalty:

> 4. The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

ting factor to apply only to contract killings. This reading of the statute was rejected shortly thereafter in *State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).

Poland has confused the Due Process requirement that a criminal statute give adequate notice of prohibited conduct with the requirement that aggravating factors sufficiently channel the *sentencer's* discretion.

■ The test for determining whether statutes regulating conduct by use of criminal penalties provide "adequate notice" has been variously stated by the Supreme Court: they can't be "so vague and undefined as to afford no fair warning of what conduct might transgress them," *Raley v. Ohio*, 360 U.S. 423, 438, 79 S.Ct. 1257, 1266–67, 3 L.Ed.2d 1344 (1959); "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). In the present case, the adequate notice requirement is fulfilled by the felony-murder statute, which Poland does not challenge.

■ In contrast, the function of aggravating factors is not to give notice to potential defendants that their contemplated conduct is at risk. Rather, the purpose of aggravating factors is to guide the *sentencer*:

> When a federal court is asked to review a state court's application of an individual statutory aggravating or mitigating circumstance in a particular case, it must first determine whether the statutory language defining the circumstance is itself too vague to provide any guidance to the sentencer. If so, then the federal court must attempt to determine whether the state courts have further defined the vague terms and, if they have done so, whether those definitions are constitutionally suffi-

cient, i.e., whether they provide *some* guidance to the sentencer.

*Walton v. Arizona*, 497 U.S. 639, 654, 110 S.Ct. 3047, 3057–58, 111 L.Ed.2d 511 (1990) (emphasis original).

The Supreme Court rejected an argument similar to Poland's when advanced by the State of Oklahoma in *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988). The Court said:

> The difficulty with the State's argument is that it presents a Due Process Clause approach to vagueness and fails to recognize the rationale of our cases construing and applying the Eighth Amendment. Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.... Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman v. Georgia[*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346] ....

Poland's claim that the statute defining aggravating factors did not give *him* adequate notice that the death penalty might apply in the case of a murder committed in the course of a robbery thus has no merit.

### C. *Reweighing*.

■ Following the jury's guilty verdict in the second trial, the trial court imposed the death penalty. It again found the existence of the "especially heinous, cruel or depraved manner" aggravating factor,[4] as well as the expectation of pecuniary gain factor.

---

5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.

4. After the first trial, the trial court found the existence of only one aggravating circumstance-that the murders were committed in an especially heinous and depraved manner. The trial

On appeal, the Arizona Supreme Court again set aside the trial court's finding that the murders were committed in a heinous, cruel or depraved manner. *State v. Patrick Poland,* 698 P.2d at 200. It affirmed the trial court's finding that the murders were committed in the expectation of pecuniary value. *Id.,* 698 P.2d at 200, 201. It was thus necessary for the Arizona Supreme Court to perform a harmless error review or reweigh the remaining aggravating circumstance against the mitigating circumstances. *See Jeffers v. Lewis,* 38 F.3d 411, 414 (9th Cir. 1994) (en banc), *cert. denied,* — U.S. —, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). The parties do not dispute that a harmless error review was not conducted. Poland contends, however, that the Arizona Supreme Court did not conduct the required reweighing of *all* the mitigating circumstances against the one remaining aggravating circumstance.

The Arizona Supreme Court specifically noted that it "will, in all death cases, make an independent review of the facts to determine for itself the aggravating and mitigating circumstances." 698 P.2d at 210. After affirming the trial court's finding of the pecuniary gain factor, the Arizona Supreme Court specifically reviewed the mitigating circumstances. *State v. Michael Poland,* 698 P.2d at 210. First, it affirmed the trial court's rejection of good reputation as a mitigating factor. *Id.*

Next, the court agreed with the trial court that while close family ties was a mitigating factor, it was not substantial enough to overcome the aggravating factor. *Id.* 698 P.2d at 210–11. Detailed discussion of this factor was required due to Poland's contention that the trial court had improperly commented on the family ties factor. The Arizona Supreme Court described the trial court's comments as "devaluing" the factor. *Id.* 698 P.2d at 211.

The court then moved to the other two mitigating factors found by the trial court and stated: "We further find that neither

court specifically found the aggravating factor of pecuniary gain to not be present.

In reversing the convictions based on juror misconduct, the Arizona Supreme Court found insufficient evidence to support the trial court's

defendant's age, thirty-six at the time of the offense, ... nor the fact that he was a model prisoner, ... are mitigating factors sufficiently substantial to call for leniency." *Id.* 698 P.2d at 211 (citations omitted).

All five members of the court concurred in the affirmance of Poland's conviction, but two dissented from imposition of the death penalty based on double jeopardy, a position rejected by the Supreme Court. *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). This distinguishes Poland's case from *Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). There, the principal opinion of the Arizona Supreme Court attracted the votes of two justices, two justices separately concurred, and one justice dissented. The Supreme Court reversed the Ninth Circuit's denial of habeas relief on the basis that the two concurring justices had not reweighed following the invalidation of one of the aggravating factors. Since a majority of the court did not reweigh, the sentence was invalid. *Id.* at 48–49, 113 S.Ct. at 535–36. In contrast, in Poland's case, a clear majority (three justices) concurred in affirming the death sentence.

The State of Arizona argued in *Richmond* that the Court should presume that the Arizona Supreme Court reweighed because, in part, of its obligation to do so as part of the "independent review" of death sentences. *Id.* at 49, 113 S.Ct. at 535–36. The Court said that while there was "some force to this suggestion," it rejected the suggestion because any such presumption was overcome by the specific language used in the concurrence. *Id.*

This court presumes that "state courts follow the law, even when they fail to so indicate." *Jeffers v. Lewis,* 38 F.3d 411, 415 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995) (citing *Beam v. Paskett,* 3 F.3d 1301, 1306 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994)). It is

finding that the murders were committed in "an especially heinous, cruel, or depraved manner," and that the trial court had erred in concluding that the murders had not been committed for pecuniary gain. *Poland I,* 645 P.2d at 800–801.

sufficient that a sentencing court state that it found no mitigating circumstances that outweigh the aggravating circumstances. *Parker v. Dugger*, 498 U.S. 308, 318, 111 S.Ct. 731, 737–38, 112 L.Ed.2d 812 (1991).

Here, the Arizona Supreme Court analyzed each mitigating factor claimed to exist. It ended the opinion by saying "No mitigating circumstances sufficiently substantial to call for leniency have been found." 698 P.2d at 211. Given the presumption that the court followed the law, the court's recognition of its independent duty to review the factors, the court's specific discussion of each of the mitigating factors, and the closing sentence, we hold that the Arizona Supreme Court sufficiently weighed the remaining aggravating circumstance against the mitigating circumstances.[5]

■ Poland also asks us to "note" the case of *State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993) (En Banc), *cert. denied*, — U.S. —, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). There the Arizona Supreme Court took a new look at the question whether it should remand to the trial court for reweighing when it determined the sentence was improperly imposed. It concluded that, in general, remand was preferable: "Therefore, in those cases in which the trial judge has erred in the sentencing process and there is mitigating evidence of more than de minimis weight, we will remand...." *Id.* 858 P.2d at 1212.

The Arizona Supreme Court's statement of what is to be done in the future does not indicate that it is invalidating what it had done in the past. If that is the court's intention, it has not yet said so. Our noting of *State v. Bible* does not change our conclusion.

D. *Double Jeopardy.*

■ Poland claims that the State violated his rights under the double jeopardy provisions of the Fifth and Fourteenth Amendments to the Constitution, when he was sentenced to death in the second trial based on a finding that the pecuniary gain factor applied.

At the first sentencing, the trial court did not find the pecuniary gain factor, based on what the Arizona Supreme Court held was a misinterpretation of the statute. *Poland I.* 645 P.2d at 800–801. At the second sentencing, the trial court found the pecuniary gain factor to exist, and again imposed the death sentence, which was upheld on appeal. *State v. Michael Poland*, 144 Ariz. 412, 698 P.2d 207. The double jeopardy claim was rejected by the Arizona Supreme Court in Patrick's appeal. *State v. Patrick Poland*, 144 Ariz. 388, 698 P.2d 183, 198–99.

The Polands obtained review by the United States Supreme Court, which upheld the sentence. *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). Poland now argues that the failure of the trial court to find the pecuniary gain factor in the first trial collaterally estops the State from again sentencing him to death based on the pecuniary gain factor.

This argument ignores the Supreme Court's decision in *Poland v. Arizona.* The whole issue there was whether the state court's failure to find the pecuniary gain factor in the first trial barred the imposition of the death penalty based on that factor in the second trial. The Court said: "We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an 'acquittal' of that circumstance for double jeopardy purposes." *Id.* at 155, 106 S.Ct. at 1755.

The Court clearly rejected Poland's position in its holding:

> We hold, therefore, that the trial judge's rejection of the "pecuniary gain" aggravating circumstance in this case was not an "acquittal" of that circumstance for double jeopardy purposes, and did not foreclose its consideration by the reviewing court. Furthermore, because the reviewing court did not find the evidence legally insuffi-

---

5. In *Poland v. Arizona,* the Supreme Court described the decision of the Arizona Supreme Court as follows: "After again reviewing and independently weighing the mitigating and ag- gravating circumstances, the [Arizona Supreme Court] concluded that the death penalty was appropriate in each petitioner's case." 476 U.S. at 151, 106 S.Ct. at 1753.

cient to justify imposition of the death penalty, there was no death penalty "acquittal" by that court.

*Id.* at 157, 106 S.Ct. at 1756.

No matter how it is semantically dressed, Poland's claim that the decision in the first trial barred imposition of the death penalty in the second trial simply has no merit in light of the Supreme Court's decision in *Poland v. Arizona.*

### E. *The Trial Judge's Presiding During the Re–Trial.*

■ When the case returned to the Arizona Superior Court following the reversal and remand in *Poland I,* the newly elected state prosecutor moved to dismiss without prejudice "for the reason that there is insufficient evidence to proceed to trial at this time." The trial judge denied the motion.

The Polands thereafter moved for a change of judge, pursuant to Rule 10.2 of the Arizona Rules of Criminal Procedure, which permits one disqualification of a trial judge without a showing of specific grounds. Alternatively, they asked for a change of judge pursuant to Rule 10.1 on the basis that the trial judge's comments at the hearing on the State's Motion to Dismiss showed his prejudice.

The motion was referred to a different judge, and was denied. The motion under Rule 10.2 was held to be untimely. As to the question of prejudice under Rule 10.1, the reviewing judge said in the order denying the motion that he had reviewed the transcript of the hearing and found "that the Judge for that Hearing uttered nothing that could be prejudicial either to the Prosecutor or the Defendants." The reviewing judge had previously announced his decision from the bench, and said: "Candidly, I have reviewed these very voluminous records, and, in reading the transcript of the matter to which you all [allude], the July 8th proceedings, I can find nothing said by the judge in that case that would lead me to feel that there was any prejudice exhibited."

Poland argues here that the trial judge's continuing to sit on the case after denying the prosecutor's motion created "an appearance of injustice" and thus violated his due process rights.

The standard of review on this issue is not entirely clear. Title 28 U.S.C. § 2254(d) directs federal courts reviewing a state court decision to presume state court factual findings to be correct, if evidenced by a written "finding" or "opinion" or "other reliable and adequate written indicia." Here, the transcript of the hearing on the motion to disqualify is an adequate writing, *Wainwright v. Witt,* 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985), as would be the subsequent minute order. There are some exceptions to the presumption, none of which apply to the present case. However, the parties have not argued the applicability of § 2254(d) so the record was not developed with that analysis in mind.

■ Since federal appellate courts review a district judge's refusal to recuse himself for abuse of discretion, *United States v. Payne,* 944 F.2d 1458, 1476 (9th Cir.1991), *cert. denied,* 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992), that appears to be an appropriate starting place, since if the state court's decision would survive review for abuse of discretion, it would pass the more rigorous analysis under *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 1713–14, 123 L.Ed.2d 353 (1993), governing review of state court decisions in federal habeas cases (substantial and injurious effect on the verdict).

An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *International Jensen v. Metrosound USA,* 4 F.3d 819, 822 (9th Cir.1993) (quotation and citation omitted).

The transcript of the hearing of July 8, 1982, demonstrates no hostility toward the Polands. The trial judge told the prosecutor that the prosecution could not be abandoned without a court order; that the possibility existed that a Special Prosecutor could be appointed, with the compensation to be deducted from the county attorney's salary; that the judge was not necessarily inclined to pursue that possibility; and that the prosecu-

tor could move for appointment of a Special Prosecutor with the assistance of the Attorney General. The judge then stated "the court declines to dismiss."

After further discussions with counsel, the trial judge stated that he was not engaging in any dispute or controversy with the prosecutor; he was not going to order him to prosecute the case and was simply pointing out there were alternatives to dismissal.

Poland does not come within the Supreme Court's statement in *Arizona v. Fulminante*, 499 U.S. 279, 309–310, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991): "The entire conduct of the trial from beginning to end is obviously affected … by the presence on the bench of a judge who is not impartial." The factual predicate for application of the *Fulminante* rule is that the judge is not impartial. This factual underpinning is missing in the present case.

Nothing in the transcript shows any bias or prejudice toward the defendants. Under Arizona law, the final decision on dismissing a criminal case rests with the trial court, for good cause. Ariz. R.Crim. P. 16.5(d). The trial court disagreed with the prosecutor's analysis and declined to dismiss the case, but not on the basis of antipathy toward the Polands.

The fact that the trial judge in the original trial was also the trial judge in the second trial is insufficient to establish bias and prejudice. "It has long been regarded as normal and proper for a judge to sit in the same case upon its remand and to sit in successive trials involving the same defendant." *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147, 1155, 127 L.Ed.2d 474 (1994).

Further, the additional fact that the trial judge denied the prosecutor's motion to dismiss does not support Poland's position. Judicial rulings alone almost never "constitute valid basis for a bias or partiality motion." *Id.* at 555, 114 S.Ct. at 1157. As the Court said in *Liteky*:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not consti-

tute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* See also *United States v. Conforte*, 624 F.2d 869, 882 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (a judge's views on legal issues may not serve as a basis for motions to disqualify).

Poland has not claimed that the trial judge displayed any animosity during the trial, nor that there was otherwise an injustice in fact from his presiding over the second trial. The fact that the trial judge presided over the second trial did not create an appearance of injustice, and the decision of the Arizona courts that the trial judge properly presided over the second trial after denying the motion to dismiss was proper. The district court did not err in denying relief on this claim.

### F.  Death by Lethal Gas.

In *Fierro v. Gomez*, 77 F.3d 301 (9th Cir.), *petition for cert. filed*, 64 U.S.L.W. 3780 (U.S. May 9, 1996) (No. 95–1830), this court held that California's use of lethal gas to execute prisoners was unconstitutionally cruel and unusual punishment. Poland has submitted information in support of his contention that Arizona's protocol for administering lethal gas is functionally identical to California's and thus unconstitutional. For purposes of this opinion, we will assume that the two methods are identical so that Arizona's use of lethal gas comes factually within the analysis of *Fierro*.

There is one controlling difference between the laws of the two states. In California, prisoners will be executed by use of lethal gas unless they affirmatively choose lethal injection. *Fierro*, 77 F.3d at 303. In Arizona, all condemned prisoners will be executed by means of lethal injection unless those who were sentenced before the adoption of lethal injection affirmatively choose lethal gas as the method to be used in their cases. A.R.S. § 13–704(B). Poland comes within the group having this option under state law. Thus, he could be executed by

lethal gas only if he affirmatively chooses that method of execution.

From the record in this case, it is clear that Poland can be held to know that he cannot legally be executed by an unconstitutional method of execution, that the Arizona lethal gas protocol is arguably an unconstitutional method, and that it will not be used in his case unless he affirmatively chooses to have it used. If lethal gas is used to put him to death, it will only be because he has waived the protections of the Eighth Amendment as made applicable to the states through the Fourteenth Amendment.

■ Waiver is the voluntary relinquishment or abandonment of a known right. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). A constitutional right is subject to waiver if the standard is met. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (right to counsel). Since execution of Poland by lethal gas could only follow his specific choice of that method of execution in the face of his knowledge of its unconstitutionality, he presents no justiciable claim for relief.

### G. *Lethal Injection as a Method of Execution.*

Poland also claims that executing him by lethal injection would violate his constitutional rights. He makes several somewhat related arguments, which we address in turn.

■ First, he contends that by making him choose his method of execution, the state has violated his rights under the Ex Post Facto Clause. While the argument is not entirely clear, it appears to be that the penalty is "enlarged" because Poland is forced to choose his method of execution. However, Poland need make no choice. If he says nothing, he will be executed by lethal injection. The mere existence of the option is not a violation of Poland's constitutional rights. *See Campbell v. Wood*, 18 F.3d 662, 688 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994).

■ Furthermore, the sentence was death, and that sentence remains in place. The change in method does not make the sentence more burdensome, and so does not violate the Ex Post Facto Clause. *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990).

■ Second, Poland directly challenges lethal injection as being cruel and unusual. Poland submitted the affidavit of Michael L. Radelet, a sociologist who collected reports of "botched" executions. The affidavit describes what happened in nine executions that used lethal injection. Seven of the nine were in Texas, one in Arkansas, and one in Oklahoma. They involved either problems in finding a suitable vein or violent reactions to the drugs. None took place in Arizona and none were tied to the protocol used in Arizona.

The fact that Texas, Arkansas and Oklahoma have experienced problems with several of their executions as stated in the Radelet affidavit proves nothing about problems using the Arizona protocol. We know from proceedings before this court that there have been several executions in Arizona which have utilized lethal injection as the method of execution. Since Poland has submitted no contrary evidence, we assume that no problems were encountered.

Poland has failed to demonstrate that the use of lethal injection as a method of execution violates his constitutional rights.

## IV

## CLAIMS HELD TO BE PROCEDURALLY BARRED

### A. *Cause and Prejudice.*

There are a number of claims which the district court held to be procedurally barred. Poland does not dispute the correctness of the district court's ruling, but argues that he is entitled to relief from the procedural bar based on a showing of cause and prejudice.

■ A showing of cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." *Murray v. Carrier*,

477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

Poland's first cause argument is that his sentencing counsel was ineffective. However he has shown no reason why his counsel on the first state PCR petition could not have raised these claims. Therefore, he has not shown cause. *See Moran v. McDaniel,* 80 F.3d 1261, 1271 (9th Cir.1996) (holding that there is no constitutional right to effective assistance of counsel in a state or federal habeas proceeding). *See also Campbell v. Wood,* 18 F.3d at 677.

Poland next argues that the "fundamental error" review of the Arizona Supreme Court constitutes a fair presentation of an issue to that court, even if not argued by the parties nor mentioned in the court's opinion. This contention was considered and specifically rejected in *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1306 (9th Cir.1996).

Likewise, Poland's reliance on *Beam v. Paskett,* 3 F.3d 1301, 1305 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994), is misplaced. The Idaho statute at issue there required the Idaho Supreme Court, in capital cases, to review the entire record and to determine if certain errors were present. *Id.* at 1306. Arizona law only requires a review of the record. A.R.S. § 13–4035. It does not require the Arizona Supreme Court to review for any particular errors. In *Beam,* this court simply presumed that the Idaho court had performed its statutory duties, whether it said so or not. *Id.* Thus, claimed errors coming within the Idaho statutory command were not procedurally barred though not raised in state court. This is not the situation in Arizona and Poland has not shown cause based on *Beam.*

### B. *Fundamental Miscarriage of Justice.*

A petitioner who cannot show cause and prejudice may yet present his procedurally defaulted claims if he can demonstrate a fundamental miscarriage of justice. *Wainwright v. Sykes,* 433 U.S. 72, 91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977). This exception is limited to those who are actually innocent. *Murray v. Carri-*

*er,* 477 U.S. at 496, 106 S.Ct. at 2649–50. The exception is also available to one who can show he is actually innocent of the death penalty. In turn, this requires a showing by clear and convincing evidence that except for the claimed error, no reasonable juror would have found the petitioner eligible for the death penalty. *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 2516–17, 120 L.Ed.2d 269 (1992).

Poland's miscarriage of justice contentions are raised under the rubric of actual innocence of the death penalty. However, his argument merely restates his collateral estoppel claim, which we have previously rejected. Therefore, he has not shown actual innocence of the death penalty, and his fundamental miscarriage of justice claim fails.

### C. *Arguments of Amicus.*

Patrick Poland's counsel filed a brief as *amicus curiae.* Some of these arguments were slightly different than Michael's, and were adopted by Michael. We will address those not already discussed.

*Amicus* argues that the district court was in error in finding procedural default, contending that the Arizona Supreme Court does not "strictly" adhere to the procedural default rules. This contention was rejected in *Martinez–Villareal,* 80 F.3d at 1306. There, we relied on *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992), *cert. denied,* 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993), in which we specifically rejected the "argument that Arizona's reliance on procedural default was so unpredictable and irregular that it does not provide an adequate ground for disposing of claims." *Id.* As was the situation in *Martinez–Villareal, amicus* has not demonstrated in this case that Arizona has become irregular in its application of procedural default rules after *Carriger.*

*Amicus* also argues that a finding of cause can attach to ineffective assistance of PCR counsel if that counsel is appointed by the State. This, it is argued, distinguishes this case from *Bonin v. Vasquez,* 999 F.2d 425 (9th Cir.1993), *(Bonin I ),* and *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *Amicus* is mistaken.

In *Bonin I,* the counsel for petitioner in federal court was a Deputy State Public Defender. The issue addressed in *Bonin I* was the Public Defender's motion to be relieved as counsel because of the possibility that it had been ineffective during its representation of Bonin in the state or federal habeas proceedings. *Id.* at 427. Thus, *Bonin I* directly involved a lawyer appointed by the State, and it cannot be distinguished on the basis urged by *amicus.*

## CONCLUSION

We find no error in the district court's denial of Poland's petition for writ of habeas corpus. The judgment is AFFIRMED.